USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT No. 97-1051 UNITED STATES OF AMERICA, Appellee, v. JOS A. MARRERO-RIVERA, Defendant, Appellant.  ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Hector M. Laffitte, U.S. District Judge] ___________________  ____________________ Before Selya, Circuit Judge, _____________ Cyr, Senior Circuit Judge, ____________________ and Keeton,* District Judge. ______________  ____________________ Linda Backiel for appellant. _____________ W. Stephen Muldrow, Assistant United States Attorney, with whom __________________ Guillermo Gil, United States Attorney, Jos A. Quiles-Espinosa, Senior _____________ _______________________ Litigation Counsel, Edwin O. V zquez, Deputy Chief, Criminal Division, ________________ and Nelson P rez-Sosa, Assistant United States Attorney, were on brief _________________ for appellee.  ____________________ September 8, 1997  ____________________  ____________________ *Of the District of Massachusetts, sitting by designation. CYR, Senior Circuit Judge. Appellant Jos A. Marrero CYR, Senior Circuit Judge. _____________________ Rivera ("Marrero") contends that the district court erred in denying his motion to withdraw his guilty plea, see Fed. R. Crim. ___ P. 32(e), and miscalculated the quantity of cocaine for which he was held criminally responsible at sentencing. We affirm the district court judgment. I I BACKGROUND BACKGROUND __________ Appellant Marrero, owner and operator of a small "cafeter a," employed one Jes s Flette Hidalgo ("Flette").1 After unwittingly negotiating with undercover DEA agents and a confidential informant, Flette agreed to supply them with ten kilograms of cocaine, then transmitted a message to Marrero's beeper stating that "ten jet skis" should be prepared. Flette later emerged from the Marrero business establishment carrying a box containing one kilogram of cocaine. Shortly thereafter, Marrero was arrested in possession of the beeper to which Flette had transmitted the "ten jet skis" message.2 Marrero initially entered a "not guilty" plea to the charge of conspiring with Flette to possess, with intent to  ____________________ 1The record is silent as to the work Flette was required to perform for Marrero. 2The government contended that the one kilogram contained in the box was a sample, intended to demonstrate the quality of the ten kilograms to be supplied.  Three months after pleading guilty, Marrero first asserted that he had not known what was in the box which he left at the cafeteria for Flette following his receipt of the "ten jet skis" message on the beeper. 2 distribute, ten kilograms of cocaine in violation of 21 U.S.C.  841(a)(1), 846. Thereafter, Marrero's lead counsel, Jos Aguayo, Esquire, advised that a plea agreement would be in Marrero's best interests and tried to persuade him to plead guilty. Later, on July 19, 1996, confronted with a 5:00 p.m. deadline for informing the government whether he would change his plea, and after consulting with a second attorney, Marrero ultimately decided to plead guilty.3 A. The Rule 11 Hearing A. The Rule 11 Hearing ___________________ On July 22, 1996, Marrero pled guilty pursuant to a plea agreement and the district court conducted a comprehensive Rule 11 hearing. See Fed. R. Crim. P. 11. The court inquired, ___ inter alia, into Marrero's educational and employment background. _____ ____ Marrero stated that he had read, signed, and understood the plea agreement, after discussing it with counsel. He further acknowl- edged that he was satisfied with Attorney Aguayo's represen- tation, that he understood the indictment discussed with him by counsel,4 and that he understood his legal rights as explained by  ____________________ 3Even after meeting with both counsel, however, Marrero had remained determined to proceed to trial. At around 3:30 or 4:00 p.m., Marrero and Aguayo went to a local bar for about an hour while a potential defense witness decided whether he would testify without a subpoena. 4Count 1 alleged that Marrero and Flette "did unlawfully, _______ ___ ______ ___ __________ willfully, and intentionally combine, conspire, confederate, and agree together with each other, to commit offenses against the _____ ________ ____ ____ _____ __ ______ ________ United States, to wit: willfully, knowingly and unlawfully __ ___ __________ _________ ___ __________ attempting to possess with intent to distribute multi-kilogram __________ __ _______ ____ ______ __ __________ amounts, that is, ten (10) kilograms of cocaine, a schedule II ___ __ _________ __ _______ narcotic drug controlled substance, that is, conspiracy to ____ __ __________ __ violate Section 841(a)(1) of Title 21, United States Code. _______ _______ _________ __ _____ __ ______ ______ ____ All in violation of Title 21, United States Code, Section ______ ______ _____ _______ 3 the court. The district court then went through the indictment in abbreviated fashion.5 Marrero acknowledged that he understood the potential penalties attending the conspiracy charge and explicit- ___ _________ ly agreed that he was criminally responsible for conspiring with __ ______ ____ __ ___ __________ ___________ ___ __________ ____ Flette to distribute ten kilograms of cocaine. He assured the ______ __ __________ ___ _________ __ _______ court that he had not been coerced or intimidated into pleading guilty; that he had read and signed the "Government's Version of the Facts" appended to the plea agreement, and, after discussing it with Attorney Aguayo, acknowledged that the actual events were as recited by the government.  The prosecutor then described the factual predicate for the guilty plea, including the meeting between Flette and the undercover agents, at which it was "agreed that Jesus Flette and persons working with him would provide 10 kilograms of cocaine to  ____________________ 846." ___ (Emphasis added.) 5The Rule 11 colloquy regarding the indictment proceeded essentially as follows:  [Court]: "Now, in Paragraph 1 of the plea agreement, you agree to plead guilty to Count One of the indictment, charging a violation of Title 21, U.S. Code, Section 846 and 841(a)(1). Is that so?" [Marrero]: "Yes, sir." [Court]: "And Count One charges you with conspiring with others to unlawfully attempt- ing [sic] to possess with intent to distribute multi-kilograms, that is, 10 kilograms of cocaine . . . that is, a conspiracy to violate Section 841(a)(1) of Title 21. Is that so?" [Marrero]: "Yes, sir." 4 the undercover DEA agents." The prosecutor stated that "[a] beeper message was sent to a pager company, indicating that the ten jet skis should be prepared because the buyers were ready."6 Further, the prosecutor described how Flette had entered the Marrero cafeteria and left with the box of cocaine, and how, when arrested, Marrero was carrying the beeper bearing the "ten jet skis" message from Flette. Finally, the prosecutor represented that Flette would establish that Marrero had "willingly and knowingly conspired with Jesus Flette and others to distribute 10 kilograms of cocaine and in fact did distribute the one kilogram of cocaine." At this point, Marrero agreed with the government's version of the relevant events as described by the prosecutor. The district court accepted the guilty plea after determining that it was voluntary, knowing, and intelligent.  B. The Rule 32(e) Hearing  B. The Rule 32(e) Hearing  ______________________ Shortly after the presentence-investigation interview, and some three months after the Rule 11 hearing, Marrero moved to withdraw the guilty plea, see Fed. R. Crim. P. 32(e), claiming ___ that it was: (1) involuntary, in that he had succumbed to a sense of helplessness and futility when confronted with Attorney Aguayo's advice that the benefits of the plea agreement outweighed the risks of conviction at trial; (2) not "intelli-  ____________________ 6The Government's Version of the Facts described the beeper message as: "Jesus Flete then sent a message to a beeper service to be forwarded to the beeper of the defendant, Jose Marrero- Rivera. That message stated that the ten 'jet skis' (referring to the ten kilos of cocaine) should be prepared." (parenthetical in original). 5 gently" made, as it had been premised on several incorrect assumptions, including that he was guilty of conspiracy simply because he had received and retained the box for his employee, Flette, even though he had no contemporaneous knowledge as to ____ ______ __ ___ __ _______________ _________ __ __ what was in the box; (3) not "knowingly" made, in that he had ____ ___ __ ___ ___ delegated to counsel the responsibility for reviewing and inter- preting the plea agreement, and thought that once he had agreed to change his plea he would have to sign the plea agreement and _____ ____ __ provide affirmative responses during the change-of-plea colloquy; (4) not adequately supported by the Government's Version of the Facts, or the prosecutor's summary during the Rule 11 hearing, because there was no demonstration that Marrero had known that the box he had held in his hands contained cocaine; and (5), predicated on an inadequate Rule 11 inquiry, in that the district court neither asked, nor determined, whether Marrero had understood the mens rea element for the crime of conspiracy. ____ ___ At the ensuing Rule 32(e) hearing, Attorney Aguayo testified that he had explained the plea agreement to Marrero, but did not coerce him to sign it. Upon inquiry by the district court, as to whether Aguayo had "explain[ed] the nature of the charges" and "the issue about . . . the requirement the government had to prove his knowing participation in the conspiracy," Aguayo replied that he had done so and that he had "explained . . . very clearly that . . . in order for the Court to accept a plea of guilty there had to be a basis in fact for it." Marrero responded by introducing notes, used by Aguayo 6 during their change-of-plea conference, describing Marrero's admission as follows: "What I did . . . A person came to my business and left a package for Jesus Flette. The package contained cocaine." The district court found a sufficient factual predicate for the guilty plea, citing in particular the Government's Version of the Facts, with which Marrero had agreed and which explicitly noted that the "ten jet skis" message from Flette to __________ _____ Marrero meant ten kilograms of cocaine. See supra note 6. The ___ _____ court construed this to mean that Marrero thereby acknowledged not only the true purport of the beeper message, but admitted that he had so understood the message at the time he received it. Further, the court considered its earlier Rule 11 inquiry adequate to support a reliable determination that Marrero had understood the conspiracy indictment and the plea agreement, and expressly had agreed that he was criminally responsible for conspiring to sell ten kilograms of cocaine. Finally, the district court found nothing, either in the plea agreement or the Rule 11 hearing transcript, which warranted a finding that Marrero had not understood what he was admitting to at the Rule 11 hearing. Accordingly, the district court denied the motion to withdraw the guilty plea. II II DISCUSSION DISCUSSION __________ A. Plea Withdrawal Before Sentencing A. Plea Withdrawal Before Sentencing _________________________________ 1. Legal Framework 1. Legal Framework _______________ 7 We begin with bedrock principles. There is no absolute right to withdraw a guilty plea prior to sentencing. See United ___ ______ States v. Pellerito, 878 F.2d 1535, 1537 (1st Cir. 1989), cert. ______ _________ _____ denied, 502 U.S. 862 (1991). Rather, a defendant may be allowed ______ to withdraw a guilty plea before sentencing only for a "fair and just reason." See United States v. Cotal-Crispo, 47 F.3d 1, 3 ___ _____________ ____________ (1st Cir.), cert. denied, 116 S. Ct. 94 (1995); see also Fed. R. _____ ______ ___ ____ Crim. P. 32(e) ("the court may permit the plea to be withdrawn if the defendant shows any fair and just reason"). The burden of persuasion rests with the defendant. United States v. Isom, 85 _____________ ____ F.3d 831, 834 (1st Cir. 1996); United States v. Parrilla-Tirado, _____________ _______________ 22 F.3d 368, 371 (1st Cir. 1994). The district court must consider several factors in determining whether the burden of persuasion has been met by the defendant, the most significant being whether the plea was voluntary, intelligent and knowing, within the meaning of Rule 11. Cotal-Crispo, 47 F.3d at 3; United States v. Allard, 926 ____________ _____________ ______ F.2d 1237, 1243 (1st Cir. 1991). Other relevant considerations, see pp. 22-25, include: (1) the plausibility and weight of the ___ proffered reason; (2) the timing of the request; (3) whether the defendant asserted legal innocence; and (4) whether the parties had reached, or breached, a plea agreement. Isom, 85 F.3d at ____ 834; Cotal-Crispo, 47 F.3d at 4. Finally, assuming the defendant ____________ carries the burden of persuasion on the aforementioned consider- ations, the district court must weigh in the balance any demonstrable prejudice to the government were the defendant 8 allowed to withdraw the plea. Isom, 85 F.3d at 835; Pellerito, ____ _________ 878 F.2d at 1537. At the outset, it is particularly important to note the difficult appellate terrain which the present challenge to the district court's Rule 32(e) determination must traverse; that is, the factfinding underlying the plea withdrawal ruling may not be set aside for anything less than "clear error." See, e.g., ___ ____ Pellerito, 878 F.2d at 1538 ("Confronted with an attempt at plea _________ retraction, the trial judge must make an idiocratic, particularistic, factbound assessment an assessment which is facilitated because the judge has overseen pretrial proceedings, conducted the Rule 11 inquiries, accepted the original guilty plea, and heard at first hand the reasons bearing upon its withdrawal."). If the district court's account of the evi- dence is plausible in light of the record reviewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. Cumpiano v. Banco Santander Puerto Rico, 902 F.2d 148, 152 (1st ________ ____________________________ Cir. 1990) (citing Anderson v. City of Bessemer City, 470 U.S. ________ _____________________ 564, 573-74 (1985) (bench trial findings))). Moreover, we accord considerable deference to the firsthand assessment ultimately made by the district court, which must be affirmed absent a demonstrable abuse of discretion. See United States v. Sanchez- ___ _____________ ________ Barreto, 93 F.3d 17, 23 (1st Cir. 1996), cert. denied, 117 S. Ct. _______ _____ ______ 9 711 (1997) (Rule 32(e) findings). 2. Core Rule 11 Concerns 2. Core Rule 11 Concerns _____________________ We first inquire whether certain "core" Rule 11 concerns were met. Rule 11 was "intended to ensure that a defendant who pleads guilty does so with an 'understanding of the nature of the charge and the consequences of his plea.'" Cotal- ______ Crispo, 47 F.3d at 4 (quoting McCarthy v. United States, 394 U.S. ______ ________ _____________ 459, 467 (1969)); United States v. Medina-Silverio, 30 F.3d 1, 2 _____________ _______________ (1st Cir. 1994); see also Fed. R. Crim. P. 11(c). Accordingly, ___ ____ the Rule 11 hearing should "produce a complete record of the factors relevant to that determination so as 'to eliminate any need to resort to a later factfinding proceeding in this highly subjective area.'" Allard, 926 F.2d at 1244 (quoting McCarthy, ______ ________ 394 U.S. at 469).7  A total failure to address any "core concern" mandates _____ ___ that a guilty plea be set aside. See Isom, 85 F.3d at 835; ___ ____ United States v. Gray, 63 F.3d 57, 60 (1st Cir. 1995); Medina- _____________ ____ _______ Silverio, 30 F.3d at 3. Otherwise, we consider whether any ________ particular defect in the Rule 11 hearing affected the defendant's "substantial rights." See id.; Fed. R. Crim. P. 11(h); see also ___ ___ ___ ____ United States v. Martinez-Martinez, 69 F.3d 1215, 1219 (1st Cir. _____________ _________________ 1995) (Rule 11(h) "harmless error" rule excuses "minor and technical violations"), cert. denied, 116 S. Ct. 1343 (1996); _____ ______  ____________________ 7We have identified three "core" Rule 11 concerns: (1) voluntariness i.e., absence of coercion; (2) understanding of ____ the charge; and (3) knowledge of the consequences of the guilty plea. See Medina-Silverio, 30 F.3d at 2. ___ _______________ 10 United States v. Raineri, 42 F.3d 36, 41-42 (1st Cir. 1994) ______________ _______ (harmless error analysis usually looks to whether error influenced decisionmaker or ultimate outcome, but these are not only proper considerations under Rule 11(h); "substantial rights" not violated where defendant was not properly informed of maximum penalty but received lesser sentence than maximum), cert. denied, _____ ______ 515 U.S. 1126 (1995). In determining whether there was a total failure to address a core Rule 11 concern, we review all "the circumstances surrounding the Rule 11 hearing . . . [with a view to determining] what was communicated by the trial court, and what should reasonably have been understood by the defendant, ____ ______ __________ ____ ____ __________ __ ___ _________ rather than the form of the communication." Cotal-Crispo, 47 ____________ F.3d at 4-5 (citations omitted) (emphasis added).  (a) Voluntary Plea  (a) Voluntary Plea  ______________ Marrero maintains that Aguayo pressured him into accepting the plea agreement at the last minute, even though Marrero was still "inclined to go to trial" within an hour or so before the deadline for changing his plea. Marrero paints a vivid picture: "definitely anxious . . . more anxious than usual," waiting at a local bar, with his attorney, to learn whether or not a potential witness would agree to testify without a subpoena, before deciding at the eleventh hour to accede to his attorney's importunings to accept the plea bargain tendered by the government.8 Furthermore, as he did at the Rule 32(e)  ____________________ 8During the Rule 32(e) hearing, Aguayo testified that while waiting at the bar he had a beer, but could not recall whether Marrero did. As Marrero has not alleged that he had anything to 11 hearing, Marrero contends that Aguayo's description of the prospective sentence was overly rosy,9 whereas his estimation of the prospects for success at trial was unduly pessimistic.10 Notwithstanding Marrero's resourceful challenge, there was no clear error or abuse of discretion in the finding that the guilty plea was voluntary. At the Rule 11 hearing, the district court appropriately inquired whether Marrero was acting freely and whether anyone had coerced him into pleading guilty. Marrero reassured the district court under oath that he was pleading freely and that no one had attempted to coerce him. Aguayo corroborated these representations. Accordingly, Marrero's sworn responses were reasonably credited by the district court, as "[i]t is the policy of the law to hold litigants to their assurances." Parrilla-Tirado, 22 F.3d at 373; see also United _______________ ___ ____ ______ States v. Martinez-Molina, 64 F.3d 719, 733 (1st Cir. 1995) ______ _______________ (statements at plea hearing "carry a strong presumption of verity" (quoting Blackledge v. Allison, 431 U.S. 63, 74 (1977))). __________ _______  ____________________ drink, however, there is no suggestion in the record that the guilty plea was rendered involuntary in this regard. 9For example, Marrero points to Aguayo's suggestion that there was a "drug program" pursuant to which Marrero might be able to reduce his sentence by a year, that he would be eligible for "good-time" credits, and that he could spend the final 10% of his prison stay in a half-way house. 10Marrero also faults Aguayo's failure to advise him of a possible defense (i.e., that Marrero lacked the requisite mens ____ ____ rea for conspiracy), and for failing to mention either the ___ possibility that Flette's testimony might be vulnerable on cross- examination or that certain favorable jury instructions might be given. 12 Moreover, Marrero's belated representation that he believed he had to answer all questions in the affirmative during ___ __ the Rule 11 colloquy cannot be credited, on its face, without __ ___ ____ virtually displacing the "clear error" standard of review governing the appellate inquiry. Cf. United States v. Butt, 731 ___ _____________ ____ F.2d 75, 80 (1st Cir. 1984) (even where appellant represents that, upon advice of counsel, he uttered false statements at Rule 11 hearing, those statements will be presumed true unless the contrary allegations state a claim for ineffective assistance of counsel and include credible, valid grounds for departing from the normal presumption). Similarly, there is no affirmative evidence that Marrero acted involuntarily. Consequently, even assuming counsel persuaded him that a guilty plea would best serve Marrero's interests, the resultant plea would not have been rendered "involuntary." See Miles v. Dorsey, 61 F.3d 1459, 1470 (10th ___ _____ ______ Cir. 1995), cert. denied, 116 S. Ct. 743 (1996); Williams v. _____ ______ ________ Chrans, 945 F.2d 926, 933 (7th Cir. 1991) ("'Advice even ______ strong urging' by counsel does not invalidate a guilty plea.") (quoting Lunz v. Henderson, 533 F.2d 1322, 1327 (2d Cir.), cert. ____ _________ _____ denied, 429 U.S. 489 (1976)), cert. denied, 502 U.S. 1208 (1992). ______ _____ ______ Nor can the mere fact that Marrero and counsel may have undervalued the merit of any potential defense render the Rule 11 plea involuntary. See United States v. Muriel, 111 F.3d. 975, ___ ______________ ______ 981 (1st Cir. 1997) ("This court has not allowed defendants, absent coercion or mistake, to renege on plea agreements on the 13 basis that they have miscalculated their risks and benefits or have belatedly discovered a new defense."). Rather, in determining whether to arrive at a plea agreement, criminal defendants, with the assistance of counsel, must compare the merit of their defenses with the strength of the government's case, as well as the penalties likely to be imposed pursuant to a plea agreement or following trial. Were it otherwise, and belatedly-realized mistakes in their pre-plea assessments were deemed sufficient, without more, to warrant plea withdrawals, "plea agreements and the pleas entered pursuant to them [would be rendered] meaningless." Allard, 926 F.2d at 1243. ______ Often the decision to plead guilty is heavily influenced by the defendant's appraisal of the prosecution's case against him and by the apparent likelihood of securing leniency should a guilty plea be offered and accepted. Considerations like these frequently present imponderable questions for which there are no certain answers; judgments may be made that in the light of later events seem improvident, although they were perfectly sensible at the time. . . . A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misappre- hended the quality of the State's case or the likely penalties attached to alternative courses of action. Brady v. United States, 397 U.S. 742, 756-57 (1970).  _____ _____________ Finally, the strategic decision to plead guilty was not rendered involuntary by the anxieties and time pressures confronting Marrero. The unenviable position in which Marrero found himself is common among criminal defendants, and hardly exceptional enough to evince an overbearing of his will or to 14 have precluded a rational assessment of the available options. See id. at 750 (no evidence defendant was so gripped by fear of ___ ___ possible death penalty as to preclude rational weighing of advantages of trial with advantages of guilty plea); Dorsey, 61 ______ F.3d at 1470 ("Although deadlines, mental anguish, depression, and stress are inevitable hallmarks of pretrial plea discussions, such factors considered individually or in aggregate do not establish that petitioner's plea was involuntary."); Pellerito, _________ 878 F.2d at 1541 ("Criminal prosecutions are stressful experiences for nearly all concerned . . . . The relevant question for plea withdrawal is . . . whether the decision to plead was voluntary, i.e., a product of free will.").  ____ (b) Knowing and Intelligent Plea (b) Knowing and Intelligent Plea ____________________________ The main focus of the Rule 32(e) claim in relation to the second core concern is that Marrero did not understand, nor was he informed about, the mens rea requirement for the ____ ___ conspiracy charge viz. that the government had to be able to ____ prove he knew, at the time, that the box he left for Flette contained cocaine and constituted a one-kilogram sample of the ten kilograms to be delivered to the buyers. In a closely related contention, Marrero insists that there was no adequate factual predicate for the guilty plea since he simply admitted to _______ having knowingly held the box for Flette and that the box contained cocaine, but that he did not know, at the time he held __ ___ ____ __ ____ the box, that it contained cocaine. ___ ___ There was no "clear error" in the district court 15 finding that Marrero understood the nature of the cocaine conspiracy charge at the Rule 11 hearing. Marrero acknowledged under oath that he had read, discussed with counsel, and understood the indictment. He endorsed the factual summary of the offense given by the government at the Rule 11 hearing. Both the indictment and the government's version of the facts plainly referred to the requisite mens rea for conviction of the ____ ___ conspiracy offense.11 Thus, Marrero was explicitly informed of __________ the mens rea requirement for the conspiracy charge.12 ____ ___ Nor are we unmindful that Marrero claims to have been undone by the nuances of conspiracy law. But while a layman might not be expected to understand, ab initio at least, exactly __ ______ what he need have known to be found culpable as a conspirator, there can have been little question as to the point in time by __ which the requisite culpable knowledge need have been acquired; _____ ________ to wit, before the defendant's conspiratorial involvement, if any, terminated. In truth then, the contention Marrero now raises concerning whether his guilty plea was "intelligent" is  ____________________ 11The indictment, see supra note 4, was replete with ___ _____ language affording Marrero notice of the requisite knowledge and intent. See also supra note 5. Moreover,the prosecutor's ___ ____ _____ summary of the facts, see supra pp. 4-5, stated that Flette's ___ _____ testimony would establish that Marrero "willingly and knowingly conspired" with Flette to distribute ten kilograms of cocaine, and did distribute one kilogram. 12The record evidence further reflects that Marrero is an adult male, age 37, who completed high school and went on to become a commercial airline pilot. At the time of his arrest, Marrero owned and operated his own small cafeteria business. The district court found that Marrero was alert and understood the Rule 11 proceedings. 16 not, as he would have it, dependent upon his understanding of the intricacies of conspiracy law, but on the commonsense, near- universal understanding that one cannot be held criminally responsible for agreeing to cooperate with another in effecting a lawful enterprise. Thus, the upshot of the present contention is ______ that Marrero pled guilty to a felony cocaine charge, carrying a potential life-imprisonment term, knowing all the while that he had never agreed to distribute cocaine. At bottom, therefore, what Marrero points to as clear error is the district court finding both at the Rule 11 and the Rule 32(e) hearing that Marrero conspired with Flette to sell ten kilograms of cocaine, knowing that the object of their agreement was unlawful. Even so, it was not essential that the ________ evidence establish that Marrero knew the box contained cocaine. Rather, it was only necessary to establish an evidentiary founda- tion upon which the district court reasonably could find that Marrero and Flette knowingly agreed to supply ten kilograms of cocaine. See, e.g., United States v. De La Cruz, 996 F.2d 1307, ___ ____ _____________ __________ 1311 (1st Cir.) (although defendant never saw or possessed cocaine, and there was no direct evidence that he knew of its existence, a combination of circumstantial factors presence at scene, suspicious conduct, subordination to drug leader, possession of cellular phone and beeper allowed jury to draw inference that scienter elements of conspiracy were present), cert. denied, 510 U.S. 936 (1993). Among the evidentiary _____ ______ considerations which sufficed, in combination, to support such a 17 showing, were Marrero's repeated admissions at the Rule 11 __________ hearing that he had conspired with Flette to distribute ten kilograms of cocaine; the employer-employee relationship between Marrero and Flette; the beeper message Marrero received from Flette to prepare "ten jet skis"; the government agents' representations; the kilogram of cocaine seized by the agents; and Marrero's acknowledgement that the government's version of the facts, see supra pp. 4-5, was correct. Furthermore, although ___ _____ it is conceivable that Marrero did not know the box contained co- caine, there is no dispute that it did contain cocaine. ___ Therefore, given the undisputed physical evidence, and Marrero's admission that he did conspire with Flette to distribute ten kilograms of cocaine, the district court's findings, both at the Rule 11 hearing and the Rule 32(e) hearing, were not only entirely plausible, but far more plausible than the scenario belatedly suggested by Marrero, even assuming he never knew the box contained cocaine. See Sanchez-Barreto, 93 F.3d at ___ _______________ 23; Cumpiano, 902 F.2d at 152. ________ The effort to establish that Marrero did not know the box contained cocaine is impeded by two additional obstacles. First, Marrero must persuade us that the district court's contrary assessment constituted an abuse of discretion. See ___ Sanchez-Barreto, 93 F.3d at 23. Second, after repeatedly repre- _______________ senting at the Rule 11 hearing that he did conspire with Flette ___ to distribute ten kilograms of cocaine, the plausibility of his present contention is seriously diminished by his continuing 18 failure, even at this late date, to attempt to articulate a theory upon which it might be determined, given the evidence relied upon by the government at the Rule 11 hearing, that he did not conspire with Flette. Thus, whether or not Marrero knew the ___ box contained cocaine at the time he left it for Flette, there was ample basis for the district court rationally to conclude that he did, as well as an abundant evidentiary foundation at the Rule 11 hearing for finding the guilty plea "intelligent" and "knowing," especially in light of Marrero's assurances to the district court that he had discussed the nature of the conspiracy charge with Aguayo and understood it. On this record, the district court's firsthand assessment that Marrero's guilty plea was knowingly and intelligently made did not constitute an abuse of discretion. See id.  ___ ___ Finally, after reviewing the entire record, we can discern nothing that might have indicated to the district court, in any way, that Marrero either did not understand, or had been misinformed by counsel regarding, any element of the conspiracy charge lodged against him. Rather, all responses given by Marrero during the Rule 11 colloquy were entirely consistent with a correct and comprehensive understanding of the conspiracy charge and its elements. See Isom, 85 F.3d at 833, 836 (holding ___ ____ that nothing in record indicated that defendant lacked understanding of charges); United States v. Ramos, 810 F.2d 308, _____________ _____ 314 (1st Cir. 1987) (no doubts raised as to competence to plead until plea-withdrawal motion); Marquis v. United States, 698 F.2d _______ _____________ 19 13, 16 (1st Cir. 1983) (no indication at Rule 11 hearing that plea was involuntary or product of misunderstanding); contrast ________ Gray, 63 F.3d at 60 (defendant represented that he was confused ____ about consequences of guilty plea); United States v. Ribas- ______________ ______ Dominicci, 50 F.3d 76, 79 (1st Cir. 1995) (responses during Rule _________ 11 colloquy "should have alerted the court that [defendant] was claiming that, at the time the trousers were sold to third parties, he did not intend to commit a crime"); United States v. _____________ Ruiz-Del Valle, 8 F.3d 98, 103 (1st Cir. 1993) (charge neither ______________ read nor explained, and defendant made statement that should have put court on notice that she did not understand firearms charge); United States v. Valencia, 923 F.2d 917, 921 (1st Cir. 1991) ______________ ________ (defendant expressed confusion about jurisdictional element of charge); Mack v. United States, 635 F.2d 20, 24-25 (1st Cir. ____ _____________ 1980) (where defendant stated first that he had been coerced, a contradictory statement that plea was voluntary could not simply be accepted by district court "Once Mack stated that the plea was not made of his own free will, the court was required to undertake a more searching inquiry." (citations omitted)).  (c) Evidentiary Predicate For Guilty Plea (c) Evidentiary Predicate For Guilty Plea _____________________________________ For similar reasons, we reject the further claim that the factual predicate for the guilty plea was inadequate. First, Marrero conceded that the government could prove, beyond a reasonable doubt, that he "willingly and knowingly conspired" with Flette and others to distribute ten kilograms of cocaine and that they actually distributed one kilogram to the undercover 20 agents. The district court was entitled to credit these sworn judicial admissions. Parrilla-Tirado, 22 F.3d at 373 ("[i]t is _______________ the policy of the law to hold litigants to their assurances."). The district court record further supports a finding that Marrero had the requisite culpable state of mind. The government's version of the facts stated that Marrero had received a beeper message to prepare "ten jet skis," specifically ____________ noting that "jet skis" meant cocaine. Marrero explicitly stated ______ ____ ___ ____ _____ _______ that he had read the government's version of the facts, discussed it with counsel, and acknowledged its truth. Marrero nonetheless contends on appeal that the record does not indicate that he understood that the government's __ rendition of "jet skis" (as a code term for "cocaine") purported to describe what Marrero, as distinguished from Flette, understood the term to mean. In addition, he now notes that there is no record evidence that "jet skis" was a prearranged code, and denies having known that it meant anything other than aquatic jet skis. _______ The factual predicate for the requisite mens rea may be ____ ___ inferred from all the evidence alluded to at the Rule 11 hearing. See United States v. Japa, 994 F.2d 899, 903-04 (1st Cir. 1993) ___ _____________ ____ (factual predicate for mens rea met even though court failed to ____ ___ ask during Rule 11 colloquy, with regard to one count, whether defendants had requisite intent, where intent reasonably could be inferred from their admission of intent in relation to another count); Cotal-Crispo, 47 F.3d at 4-5 ("What is critical is the ____________ 21 substance of what was communicated by the trial court, and what should reasonably have been understood by the defendant, rather than the form of the communication.") (citations omitted). Altogether aside from the fact that Marrero has not attempted to explain to us why he would have received a beeper message from Flette to prepare "ten jet skis," absent any record indication or contention that either he or Flette dealt in aquatic "jet skis," there is no suggestion from Marrero, plausible or otherwise, as to why the undercover agents would have offered Flette $18,000 for each "jet ski."13 More to the point, were we to postulate that the term "jet skis" did refer to the aquatic variety, we would be at a total loss ourselves to explain the uncontested fact that the box Flette delivered to the undercover agents contained cocaine. Accordingly, we conclude that the district court reasonably found that Marrero understood that the beeper message he received from Flette referred to cocaine, particularly in light of Marrero's Rule 11 admissions. See, e.g., supra note 13. ___ ____ _____ Finally, Marrero maintains that he did not understand the conspiracy charge and that once he understood it he realized  ____________________ 13Marrero explicitly acknowledged the correctness of the Government's Version of the Facts, which states that the agents offered to buy "ten jet skis" at $18,000 each. Thus, there was no clear error in the district court's finding that Marrero understood, at the time he received it, that the "jet skis" message referred to cocaine. In addition, of course, the indictment to which Marrero pled guilty did not speak in code, but plainly alleged, as an overt act, that Flette had sent a beeper message to Marrero "providing instructions regarding the sale of ten (10) kilograms of cocaine."  22 he was not guilty. See Parrilla-Tirado, 22 F.3d at 373 (asser- ___ _______________ tion of innocence weighs in favor of withdrawal). He relies on notes made by Aguayo during their Rule 11 conference, indicating that Marrero had admitted that the box he left for Flette contained cocaine. Although Aguayo stated at the Rule 32(e) hearing that he had explained to Marrero the nature of the charge and that there had to be a factual basis for it, Aguayo was not asked to explain precisely how he had described the requisite factual basis. See supra p. 6. ___ _____ We cannot permit Marrero to exploit this putative omission on direct appeal absent a fully developed record, as it amounts to a Sixth Amendment "ineffective assistance" claim. See ___ United States v. Lopez-Pineda, 55 F.3d 693, 697 (1st Cir.) ______________ ____________ (inadequate record precludes review of "ineffective assistance" claim on direct appeal; collateral review remains open), cert. _____ denied, 116 S. Ct. 259 (1995); United States v. Tuesta-Toro, 29 ______ _____________ ___________ F.3d 771, 776 (1st Cir. 1994) (collateral proceeding under 28 U.S.C. 2255 is proper forum for fact-bound "ineffective assis- tance" claim, where record is insufficiently developed for direct review), cert. denied, 115 S. Ct. 947 (1995); see also United _____ ______ ___ ____ ______ States v. McDonald, F.3d , , 1997 WL 464957 * (1st ______ ________ ___ ___ ____ Cir. August 20, 1997). Further factual development is plainly necessary as the present claim implicitly presumes that Aguayo ________ rendered ineffective assistance. Although there could be little doubt that an "ineffective assistance" claim would lie were it made to appear that defense counsel failed to explain, prior to a 23 Rule 11 hearing, that the defendant could not be convicted of conspiracy under 21 U.S.C. 841(a)(1), 846, unless he had knowingly conspired to distribute cocaine, we are not about to _________ presume professional ineptitude on the part of counsel.  3. Other Relevant Factors 3. Other Relevant Factors ______________________ Since the district court conducted a comprehensive Rule 11 hearing during which Marrero repeatedly stated that he was satisfied with Aguayo's representation, understood the charges and the consequences of his guilty plea, freely acknowledged having agreed with Flette to distribute ten kilograms of cocaine as alleged in the indictment and that he had not been coerced into pleading guilty, the Rule 11 record fully supported the district court's determination that the guilty plea was knowing, intelligent and voluntary. See Sanchez-Barreto, 93 F.3d at 23 ___ _______________ ("We have found no abuse of discretion in disallowing plea withdrawals where Rule 11 safeguards were scrupulously followed by the district court."); Ramos, 810 F.2d at 314 ("That the _____ district court thoroughly complied with Rule 11 also weighs heavily against appellant.").  Furthermore, the change of heart by Marrero came more than fourteen weeks after the Rule 11 hearing. Given the principal ground on which the Rule 32(e) motion is based  essentially that Aguayo had pressured him into pleading guilty and had not explained to him that he need have known that the object of the alleged conspiracy was to distribute cocaine we think the extended delay in seeking to vacate the guilty plea 24 likewise diminishes its plausibility. "The rule of thumb is that the longer a defendant waits before moving to withdraw his plea, the more potency his motion must have in order to gain favorable consideration." Parrilla-Tirado, 22 F.3d at 373. See also, _______________ ___ ____ e.g., Isom, 85 F.3d at 839 (two months, too long); Cotal-Crispo, ____ ____ ____________ 47 F.3d at 8 (same); Ramos, 810 F.2d at 313 (thirteen days, too _____ long). Although Marrero asserts that it is difficult to find legal representation in Puerto Rico in August, and points out that the Rule 32(e) motion was filed prior to the presentence report and sentencing, contrast United States v. Gonzalez- ________ ______________ _________ Vazquez, 34 F.3d 19, 22-23 (1st Cir. 1994) (defendant moved to _______ withdraw plea after presentence report suggested he would receive a stiff sentence); Parrilla-Tirado, 22 F.3d at 373 (same), these _______________ other considerations alone do not warrant setting aside the district court's firsthand assessment that there was no fair and just reason for allowing Marrero to withdraw his guilty plea. See Cotal-Crispo, 47 F.3d at 3. ___ ____________ B. Calculation of Drug Quantity  B. Calculation of Drug Quantity  ____________________________ In another vein, Marrero challenges the finding that he was criminally responsible for ten kilograms of cocaine. He contends that the district court failed to consider whether he had either the intent or the ability to distribute the negotiated quantity of cocaine ten kilograms. See U.S.S.G. 2D1.1, ___ comment. (n.12) (1995) ("If, however, the defendant establishes _________ ___________ that he . . . did not intend to provide, or was not reasonably capable of providing the agreed-upon quantity . . ., the court 25 shall exclude from the offense level determination the amount of controlled substance that the defendant establishes that he . . . did not intend to provide or was not reasonably capable of providing.") (emphasis added). Marrero further maintains that even assuming he knew the box contained one kilogram of cocaine, it was not "reasonably foreseeable" that the one kilogram was a sample for a ten-kilogram sale, and therefore he should not have been found culpable for the total amount negotiated by Flette. See U.S.S.G. 1B1.3(a)(1)(B), comment. (n.2) (1995). ___ There can have been no clear error, see United States ___ _____________ v. Miranda-Santiago, 96 F.3d 517, 524 (1st Cir. 1996), as the ________________ district court correctly found that Marrero had admitted, both in the plea agreement and during the Rule 11 hearing, that he was responsible for ten kilograms of cocaine as charged in the indictment. See supra note 2. The district court was entitled ___ _____ to credit these sworn admissions. See Parrilla-Tirado, 22 F.3d ___ _______________ at 373; Martinez-Molina, 64 F.3d at 733; Carter, 815 F.2d at 829; _______________ ______ Butt, 731 F.2d at 80.  ____ Finally, the claim that Marrero did not intend to produce, or was not capable of producing, ten kilograms of cocaine, fails as well, since there was no attempt to demonstrate that he and Flette were not reasonably capable of delivering the amount agreed upon with the undercover agents. See U.S.S.G.  ___ 2D1.1 comment. (n.12) (1995). Accordingly, Marrero's admissions afforded ample support for the district court finding that he was criminally responsible for ten kilograms.  26 III III CONCLUSION CONCLUSION __________ For the foregoing reasons, the district court judgment is affirmed, without prejudice to appellant's right to renew the ________ ineffective assistance claim in a collateral proceeding. 27