**UNITED STATES of America**

v.

**Roland P. LaCOMBE, Defendant**

**No. CR. 01–19–PH.**

United States District Court,
D. Maine.

April 3, 2002.

George T. Dilworth, Asst. U.S. Atty., Office of the U.S. Attorney, Portland, ME, for Plaintiffs.

Thomas L. Goodwin, Esq., Strike, Goodwin & O'Brien, Portland, ME, for Defendant.

## DECISION AND ORDER ON DEFENDANT'S MOTION TO WITHDRAW PLEAS OF GUILTY AND FOR APPOINTMENT OF SUBSTITUTE COUNSEL

HORNBY, Chief Judge.

On November 2, 2001, pursuant to a plea agreement, the defendant pleaded guilty to 6 counts of a 25–count Indictment charging fraudulent activities over the Internet. I conducted a thorough Rule 11 hearing, confirming that the defendant had discussed the charges with his lawyer, understood them, was knowingly, intelligently and voluntarily making the decision to plead guilty, was actually guilty, and that there was a factual foundation for his guilty plea to the 6 counts.

During the presentence investigation, the defendant began to develop cold feet as to one count, Count 25, charging him with bank fraud. The Probation Officer so advised me and counsel by a written memorandum dated January 28, 2002. I conducted a conference of counsel and subsequently a hearing to explore the matter further.

At the hearing held on February 7, 2002, the defendant reaffirmed his guilty plea to 4 of the 6 counts (including Count 25), this time with a specific focus on *mens rea.* He equivocated, however, on the *mens rea* for Counts 7 and 8.

After the hearing and notwithstanding his unequivocal reaffirmation of his guilty plea to 4 of the 6 counts, the defendant filed this motion to withdraw his guilty plea to all 6 counts. He presents three arguments: (1) that the plea was not voluntary (his memorandum of law reveals that what he really means is that he did not appreciate the *mens rea* requirement [1]

); (2) that the plea was not knowing and intelligent (same argument); and (3) ineffective assistance of counsel (same argument adding the assertion that his lawyer did not give him adequate explanations). Def.'s Mot. to Withdraw Pleas of Guilty and for Appointment of Sub. Counsel at 1. The Government opposes the motion.

 Federal Rule of Criminal Procedure 32(e) provides: "[T]he court may permit the plea to be withdrawn if the defendant shows any fair and just reason." Fed.R.Crim.P. 32(e). First Circuit case-law is clear. I am to consider six factors in a motion to withdraw a guilty plea: (1) whether the plea was voluntary, intelligent and knowing within the meaning of Rule 11 (this is the most important factor); (2) the plausibility of the reason for withdrawing the plea; (3) the timing of the motion; (4) whether the defendant is asserting actual innocence; (5) whether there is a plea agreement; and (6) if the defendant meets his burden of persuasion on these factors, I must weigh against them any prejudice to the government. *United States v. Marrero–Rivera,* 124 F.3d 342, 347 (1st Cir. 1997). (The government's interest carries little weight here. The government concedes that it still can proceed to trial with only modest prejudice caused by the delay. Gov't's Obj. to Def.'s Mot. to Withdraw Pleas of Guilty at 15.)

I pause briefly on factors two through four: the timing of the motion is suspicious, coming as it does as the presentence investigation focused its attention upon the defendant's conduct and made concrete the penalties he will actually suffer; the defendant's motion asserts innocence, but the claim is not credible, following the defendant's unambiguous statements of his guilt

---

1. He does refer to being "coerced" in the sense that he otherwise faced immediate incarceration and other "sentencing consequences," Def.'s Mot. to Withdraw Pleas of Guilty and for Appointment of Substitute Counsel at 4, but that is not coercion. *United States v. Marrero–Rivera,* 124 F.3d 342, 350 (1st Cir.1997).

and of his *mens rea* for 4 of the 6 counts at the February 7 hearing; and the asserted reason for the motion—that the probation officer's questions crystallized for the defendant that he had not really intended to defraud anyone—is simply not plausible in light of what the defendant has said to me in open court.

The first factor—whether the plea was voluntary, intelligent and knowing—is the most significant. *Marrero–Rivera,* 124 F.3d at 347. Within that first factor are the "three 'core' *Rule 11* concerns: (1) voluntariness—*i.e.,* absence of coercion; (2) understanding of the charge; and (3) knowledge of the consequences of the guilty plea." *Id.* at 348 n. 7. The November 2 Rule 11 inquiry for this defendant was thorough on each of these:

> THE COURT: .... The purpose of the hearing this morning then, Mr. LaCombe, is for me to decide whether to accept your guilty plea. Before I can do that, I have to be satisfied that you're pleading guilty voluntarily, intelligently, with an understanding of the rights that you're giving up by pleading guilty, and there's a factual basis for your guilty plea.

Tr. of Proceedings, Nov. 2, 2001, at 4–5.

### ABSENCE OF COERCION

> THE COURT: .... Mr. LaCombe, would you and Mr. Goodwin please stand again. Mr. LaCombe, has anybody threatened you or tried to force you in any way to plead guilty?
>
> Mr. LACOMBE: No, sir.

*Id.* at 13.

### UNDERSTANDING THE CHARGE

> THE COURT: Did you receive a copy of the superseding indictment, Mr. LaCombe?
>
> MR. LACOMBE: Yes, I did.

> THE COURT: Did you have enough time to discuss the charges with your lawyer?
>
> MR. LACOMBE: Yes, I have.
>
> THE COURT: Did he explain to you the elements and nature of the offenses and in addition the penalties that can be imposed?
>
> MR. LACOMBE: Yes, he has.
>
> THE COURT: Mr. Goodwin, are you satisfied that Mr. LaCombe understands both the charges and the penalties?
>
> MR. GOODWIN: Yes, sir, I am.
>
> THE COURT: Mr. LaCombe, you're charged in an indictment that in all contains 25 counts, I'm going to go over just the counts to which you're pleading guilty.
>
> Generally, the superseding indictment charges that from about April of 1999 until about February of 2001, that you devised a scheme to obtain money by false and fraudulent pretenses, representations, and promises. It goes on to detail some of the methods used that have to do with internet auction sites and your offering at internet auction things that you did not own and did not intend to obtain using different user identifications, screen names, email addresses, using aliases and bidding on items that you had posted yourself on auction sites sometimes called shilling, you're asking people to finance things, etc.

*Id.* at 5–6. After individually describing the factual circumstances of each charged count of fraud, I asked the defendant if he understood them and he reaffirmed that he understood each of the charges to which he was pleading. *Id.* at 6–8.

### KNOWLEDGE OF THE CONSEQUENCES

I confirmed that the defendant was aware of the maximum penalties he faced on each count, and that by pleading guilty

he forfeited his right to a trial by jury (and all the rights afforded criminal defendants at trial), his right not to incriminate himself, and virtually any right to an appeal. *Id.* at 9–11.

＊　＊　＊　＊　＊　＊

But the heart of the defendant's motion is his assertion that he did not actually understand the *mens rea* element of a fraud charge and that, had he appreciated the *mens rea* element, he would have realized that he was not in fact guilty and would not have pleaded guilty.[2]

I find from the record of the Rule 11 hearing that the defendant *did* understand the *mens rea* element. The Superseding Indictment—which he told me he reviewed and discussed with his lawyer—charged that he "devised a scheme to obtain money by means of false and fraudulent pretenses, representations, and promises" and that he engaged in various transactions "for the purpose for [sic] executing ... the above-described scheme to defraud and for obtaining money by means of false and fraudulent pretenses, representations, and promises." Superseding Indictment at 2, 12, 13. As quoted above, I reminded him at the Rule 11 hearing that the Indictment charged just such a scheme and he told me he understood. *Marrero–Rivera,* 124 F.3d at 350.

As for whether there was a factual basis for *mens rea,* the *Marrero–Rivera* court held that "[t]he factual predicate for the requisite *mens rea* may be inferred from all the evidence alluded to at the Rule 11 hearing." 124 F.3d at 352. I turn then to all that evidence.

At the first Rule 11, the defendant told me that the prosecution version of the offense was true to his own personal knowledge. Tr. of Proceedings, Nov. 2, 2001, at 13. That version asserted in its general preamble that the defendant, who sold musical equipment over the internet, was in severe financial difficulties; that he proceeded to offer over the internet items for sale which he did not own; that he made bogus excuses for then failing to deliver them, wrote checks on closed accounts and accounts with insufficient funds and wrote forged checks; that he used aliases to bid on his own items and thereby drive up the price; and that under those aliases he posted false positive feedback on the website for others to read. Pros. Version at 1–2. With that general background, the prosecution version turned to the particulars of the 6 counts to which the defendant was pleading guilty. If I were to consider only the particular facts alleged on each count separately, I would have to conclude that the government did not explicitly allege *mens rea* each time. But when I consider the general preamble of the government's version, which I have summarized above and which the defendant said was true to his personal knowledge, fraud can easily be inferred. *Marrero–Rivera,* 124 F.3d at 352. Moreover, when I explained the counts of the Indictment to the defendant at the Rule 11 hearing, I referred to the *mens rea* aspects of the crimes ("a scheme to obtain money by false and fraudulent pretenses, representations, and promises," Tr. of Proceedings, Nov. 2, 2001, at 6; selling over the internet "things you did not own and did not intend to obtain," *id.;* and then as to several of the counts I pointed out specifically that the charge was that he engaged in conduct "for purposes of exe-

---

**2.** On two Counts, 23 and 25, he asserts a factual disagreement with the Government's contention that the transactions were not authorized (use of a credit card without authority and a forged check, respectively). Def.'s Mot. to Withdraw Pleas of Guilty and for Appointment of Substitute Counsel at 3. Since he now claims that he believed that he had authority at the time, I treat this as a *mens rea* issue.

cuting the scheme we've talked about," *id.* at 7.). (The defendant had told me he was actually guilty of the 6 crimes.) Most important, the *mens rea* issue came to a head with the Probation Officer's memorandum and my subsequent re-examination of the defendant on February 7. There, I started with Count 25, the count on which the defendant had expressed concern to the probation officer. First, the defendant assured me that he did not want to withdraw his guilty plea and was only concerned with the probation officer's wording of the offense conduct. Tr. of Proceedings, February 7, 2002, at 6. He proceeded to agree explicitly that he had forged someone else's signature on a check and presented it to the bank. *Id.* at 7. That is enough for bank fraud in Count 25.

At the Government's urging, I proceeded to address the other counts as well. The defendant unequivocally stood by his plea to Count 1. *Id.* at 8. On Count 18, the defendant affirmed unequivocally that he posted false bids on his own product on the internet to increase the price. *Id.* at 19. On Count 23, credit card fraud, after some equivocation, the defendant confirmed that he knowingly used someone else's credit card without authority (for $1,000 or more), and that there was no doubt about it. *Id.* at 20. On Count 7, the defendant began equivocating as to his intent, first limiting the fraud by stating "I am guilty for misleading Mr. Gengler to assume that he would receive the product more quickly than I reasonably felt that I could deliver it." *Id.* at 9. He admitted that he did not have the product, a piano, when he posted it for sale and said "I mislead [sic] Mr. Gengler into believing that he would receive his piano promptly when I knew that I was having problems with the supplier and that there was a good possibility that it would be delayed further than the time that I expressed to him." *Id.* at 10. His lawyer then explained to me why, under the evidence and the legal concept of will-

ful blindness, a guilty plea was appropriate. *Id.* at 10–12. When I pressed the defendant further, he stated "it wasn't my initial intent to defraud Mr. Gengler, the fact is that he was defrauded, and he was defrauded by my actions." *Id.* at 15. Still later he stated that he did believe at the time that he could deliver the piano to Mr. Gengler and concluded that "my original intent in Mr. Gengler's case may not have been to defraud Mr. Gengler." *Id.* at 17. As to Count 8, charging the fraudulent sale of a car over the internet, the defendant denied fraud and said that he had located a car and had made arrangements to have it held for him when he posted it for sale on the Internet. *Id.* at 17–18.

In this connection, I turn to the fifth factor, the plea agreement. Here, the plea agreement does not affect the motion to withdraw the guilty plea in the sense that *United States v. Richardson* referred to— there has been no breach by the government, only by the defendant. 225 F.3d 46, 52 (1st Cir.2000). But it does affect the analysis in this way: the First Circuit has said that in many cases a plea agreement "results in a compromise pursuant to which the defendant makes a conscious decision to relinquish a perceived defense. As long as that decision is not the product of coercion or misinformation, the defendant may not later renege on the agreement on the ground that he miscalculated or belatedly discovered a new defense." *United States v. Allard,* 926 F.2d 1237, 1243 (1st Cir.1991). Here, the defendant's lawyer essentially told me at the February 7 hearing that the decision to enter the plea agreement was based on just such an analysis:

> I believe Mr. LaCombe agreed to this at the time we were preparing for trial and talking about it, that the whole transaction represented something akin to willful blindness about his intentions at the time that he entered into the transac-

tion, that if he subjectively thought that he was entering into a legitimate business transaction, that that subjective thought was in no way supported by the facts surrounding the transactions, and other transactions that were taking place in a contemporary time frame.

I believe there's a basis upon which the government could prove that count and the other counts that Mr. LaCombe has pled to and so advised him.

It was also my understanding at the time of the plea, and we've talked about this since that Mr. LaCombe's guilty plea to that count and to the other counts of the indictment that he has pled to under the agreement represented his understanding that at the time he entered into these transactions that he at the very least should have known that there was no realistic possibility that he was going to be able to complete the transaction.

The other evidence ... consist[s] of communications made by Mr. LaCombe to these customers, these bidders following the transaction, all of them including misrepresentations about what had happened, why the product wasn't being delivered, what the cause was for any delay and what had happened to the money.

We're aware and Mr. LaCombe is aware that those communications while they took place after the act that is alleged to be the fraud are strong evidence that at the time that he accepted the money or requested the money from the bidders, from the customers, that he wasn't—that he wasn't going to be able to deliver his part of the bargain.

Tr. of Proceedings, Feb. 7, 2002, at 11–12. This assessment of a perceived defense and the decision to relinquish it represent

exactly what the First Circuit referred to in *Allard*—a compromise relinquishing what might have been a defense (here not a very good defense). *Allard,* 926 F.2d at 1243; *see also Marrero–Rivera,* 124 F.3d at 349 (undervaluing the merit of a potential defense not a basis for finding a guilty plea involuntary; if "belatedly-realized mistakes in their pre-plea assessments were deemed sufficient, without more, to warrant plea withdrawals, 'plea agreements and the pleas entered pursuant to them [would be rendered] meaningless' "). The defendant listened to his lawyer's recitation and never disagreed with it. Equally important, the lawyer's uncontradicted statement demonstrates unequivocally that although the defendant was reluctant to admit that in his heart he planned to defraud the customers, there was an abundant factual basis to conclude that that is exactly what he was doing.

In sum, the guilty pleas to Counts 1, 18, 23 and 25 are rock-solid. On Count 7, the defendant has expressed opinions all over the lot as to what he had in mind when he posted the piano for sale. On Count 8, he now says essentially that he had no fraudulent intent. But when I consider all the factors and, in particular, the fifth factor, his plea agreement, together with what his lawyer explained without contradiction from the defendant, I find no fair and just reason to allow withdrawal of the plea as to any of the six counts.[3]

There is one other matter. In his motion to withdraw his guilty pleas, the defendant has also claimed ineffective assistance of counsel:

> At the Rule 11 hearing, the defendant stated that his attorney had gone over with him and explained to him the Plea Agreement and the Prosecution Version,

---

**3.** Even if I were to allow withdrawal of the plea on Count 8, the rest of the guilty pleas would stand regardless.

and the elements of the crimes alleged against him. He now avers that he did not fully understand those documents, or all of the elements of the crimes to which he tendered pleas of guilty, and that his misunderstandings were induced by inadequate explanations by his attorney, rendering his pleas involuntary.

Because the performance of undersigned counsel is at issue in this branch of defendant's assertion that his pleas were involuntary, defendant respectfully requests that the Court appoint substitute counsel to represent him in pursuing this claim.

Def.'s Mot. to Withdraw Pleas of Guilty and for Appointment of Substitute Counsel at 7. I treat this as a two-part argument: (1) that ineffective assistance tainted the guilty plea; (2) that substitute counsel should be appointed to pursue the claim. The Magistrate Judge has already held a hearing and appropriately denied the appointment of substitute counsel. Decision on Def.'s Mot. for Appointment of Substitute Counsel (D.Me. Feb. 26, 2002) (Cohen, J.). I add only that the defendant's desire to withdraw his guilty plea and to recede from the forthright statements he made to the Court about his understanding when he pleaded guilty in no way casts doubt on the effective assistance of his lawyer. Everything I have seen on this record including the lawyer's statements on February 7, 2002, demonstrates that this defendant is most ably represented. There has been no ineffective assistance of counsel.

The motion to withdraw pleas of guilty is **DENIED**.

So **ORDERED**.