USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT _________________________ No. 93-2246 UNITED STATES OF AMERICA, Appellee, v. LUIS A. SANTIAGO, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE [Hon. Hector M. Laffitte,* U.S. District Judge] ___________________ ____________________ Before Selya, Circuit Judge, _____________ Aldrich, Senior Circuit Judge, ____________________ and Stahl, Circuit Judge. _____________ ____________________ George F. Gormley, with whom John D. Colucci and Gormley & _________________ _______________ _________ Colucci, P.C. were on brief, for appellant. _____________ Luis A. Santiago on supplemental brief pro se. ________________ Helene Kazanjian, Assistant United States Attorney, with _________________ whom Jay P. McCloskey, United States Attorney, and Jonathan R. _________________ ___________ Chapman, Assistant United States Attorney, were on brief, for _______ appellee. ____________________ May 1, 1996 ____________________ *Of the District of Puerto Rico, sitting by designation. SELYA, Circuit Judge. A jury empaneled in the United SELYA, Circuit Judge. ______________ States District Court for the District of Maine found defendant- appellant Luis A. Santiago guilty of a single count of conspiracy to possess and distribute heroin, 21 U.S.C. 846, and the district court sentenced him as a career offender. Santiago now challenges his conviction and sentence. We affirm. I. I. __ Background Background __________ We limn the facts in the light most congenial to the verdict, consistent with record support. See, e.g., United ___ ____ ______ States v. Maraj, 947 F.2d 520, 522 (1st Cir. 1991). ______ _____ The overarching conspiracy that the government charged in the indictment and attempted to portray at trial pirouetted around Wilfredo Figueroa, a Lawrence, Massachusetts drug dealer. Figueroa began his career as a purveyor of cocaine. In 1991, he shifted his attention to heroin. He soon built up a roster of approximately fifteen clients, all from Maine. In a typical transaction a client would call Figueroa from Maine, order a certain quantity of heroin, and then sojourn to Lawrence to take delivery. Occasionally a client would appear on Figueroa's doorstep without any prearrangement, and Figueroa would improvise. In effect, Figueroa acted as a middleman (or so the jury could have found). From October 1991 forward, he had two suppliers: Angel Soto and the appellant. Figueroa patronized Soto as his principal supply source but turned to the appellant 2 whenever Soto could not fill an order. Furthermore, some of Figueroa's clients preferred the "brand" of heroin that the appellant carried, and Figueroa invariably used Santiago as his source of supply whenever a client ordered that brand.1 When Figueroa asked for heroin, the appellant would either deliver the drugs personally or arrange for their delivery. All the deliveries took place in Massachusetts. Figueroa (who cooperated with the government and testified at the trial) stated that he purchased an average of fifty bags of heroin a day from the appellant at $15 apiece, often on credit. Although the appellant claims that he never met any of the retail customers, the government presented evidence that contradicted this assertion; and, moreover, Figueroa testified that he informed the appellant that all his clients were coming from Maine to Massachusetts to buy heroin. Figueroa's involvement in the drug trade followed a hallowed family tradition. His uncle, Roberto Figueroa, dealt drugs in Maine. Blood may be thicker than water, but it is by no means thicker than self-interest. When lawmen closed in on Roberto Figueroa's operation he threw his nephew to the wolves in hopes of mitigating his own punishment. To help set the snare, Roberto ordered 130 bags of heroin from his compliant nephew and demanded delivery in Maine. The appellant sold fifty bags of  ____________________ 1Santiago (who wrapped individual doses of heroin in plastic) and Soto (who used paper bags) packaged their products differently. Clients identified their preference for one brand over another by reference to the packaging. 3 heroin to Figueroa and Soto supplied the remainder. On January 15, 1992, Figueroa and Soto exchanged the drugs for cash at a designated rest area alongside the Maine Turnpike and were promptly arrested. The authorities apprehended the appellant in Massachusetts and, without objection, removed him to Maine for trial. He was convicted and sentenced in due course. This appeal ensued. II. II. ___ Analysis Analysis ________ A. A. __ Sufficiency of the Evidence Sufficiency of the Evidence ___________________________ The appellant who is represented by fresh counsel on appeal argues that the government presented insufficient evidence to justify a conviction. Since the appellant did not preserve a sufficiency challenge by moving for judgment of acquittal at the close of all the evidence, see Fed. R. Crim. P. ___ 29, our review is limited to the prevention of clear and gross injustice. See United States v. Taylor, 54 F.3d 967, 975 (1st ___ _____________ ______ Cir. 1995); United States v. McDowell, 918 F.2d 1004, 1009-10 ______________ ________ (1st Cir. 1990). To determine a sufficiency challenge, we customarily inquire whether the evidence, taken in the light most favorable to the government a perspective that requires us to draw every plausible inference in line with the verdict and to resolve every credibility conflict in the same fashion permitted a rational jury to find each essential element of the offense of conviction 4 to have been proven beyond a reasonable doubt. See United States ___ _____________ v. Olbres, 61 F.3d 967, 970 (1st Cir.), cert. denied, 116 S. Ct. ______ _____ ______ 522 (1995); Maraj, 947 F.2d at 522-23. In a conspiracy case, as _____ in virtually any other criminal case, the government can meet this burden by either direct or circumstantial evidence, or by any combination thereof. See United States v. Echeverri, 982 ___ _____________ _________ F.2d 675, 679 (1st Cir. 1993); United States v. David, 940 F.2d _____________ _____ 722, 735 (1st Cir. 1991), cert. denied, 502 U.S. 1046 (1992).  _____ ______ The appellant's sufficiency challenge is lacking in merit. Under the statute of conviction, 21 U.S.C. 846, it was incumbent upon the government to establish that the appellant agreed with Figueroa (and, according to the indictment, possibly "other persons"), at least tacitly, to commit the substantive crime heroin distribution, see 21 U.S.C. 841(a)(1) & ___ (b)(1)(C) which constituted the object of their agreement, and that he thereafter participated in the conspiracy knowingly and voluntarily. See Echeverri, 982 F.2d at 679. The record here ___ _________ satisfies those criteria. To be sure, the appellant makes an impassioned plea that the evidence shows no more than a buyer-seller relationship between him and Figueroa. We agree with the premise that underlies this plea: a buyer-seller relationship, simpliciter, is an insufficient predicate for a finding that the buyer and the seller are guilty as coconspirators. See, e.g., United States v. _________________ ___ ____ _____________ Mancari, 875 F.2d 103, 105 (7th Cir. 1989) (holding that the sale _______ of drugs in small quantities is inadequate, without additional 5 evidence, to support a finding of conspiracy to distribute drugs to others because the seller could reasonably believe that such purchases are intended for the buyer's personal use). But the premise provides the appellant no safe harbor on the facts of this case. While a scenario in which A sells to B (who resells to C, D, E, and F) may signify that A and B are related only as vendor and vendee, such a scenario may also signify a broader, more imbricated relationship. See, e.g., United States v. Moran, ___ ____ _____________ _____ 984 F.2d 1299, 1303 (1st Cir. 1993). Knowledge and intent are at the core of the issue. Thus, the question in such a case is whether the evidence surrounding the transaction(s) is sufficient to allow a fairminded jury to find beyond a reasonable doubt that A knew that B was reselling the drugs, and intended to facilitate the resales. See id. ___ ___ The evidence here, taken in the light most congenial to the verdict, establishes that the relationship between Figueroa and Santiago contained enough elements of "[c]ommon knowledge, interdependence, [and] shared purpose," id., to support a finding ___ that they were coconspirators. Figueroa testified that the appellant had actual knowledge of the follow-on sales to Maine residents. Two of Figueroa's customers testified that on at least one occasion the appellant made a delivery of heroin to Figueroa's home and met some of his clients. The foregoing testimony was amply corroborated by the circumstantial evidence. The appellant sold Figueroa quantities of drugs (fifty bags per day) well beyond the outer limits of 6 personal use amounts and packaged them in a manner suggestive of intended resale. The regularity of the transactions, the quantities of heroin, the amounts of money involved, and the financial terms (especially the appellant's extension of credit to Figueroa), taken together, form a sturdy foundation for a finding that the appellant and Figueroa had at least a tacit agreement to distribute the heroin to third parties. Since they acted upon that tacit agreement (or so the jury could have found), the appellant's conviction is sustainable by any measure. Surely, it does not work an injustice.2 B. B. __ Venue Venue _____ The appellant next asserts that he was tried in an improper venue because he never committed a crime in the District of Maine. This assertion is baseless. It is settled beyond peradventure that venue is a personal privilege which can be waived. See Fed. R. Crim. P. 18; see also Charles A. Wright, ___ ___ ____ Federal Practice and Procedure 306 (2d ed. 1982). Here, the _______________________________ appellant consented to his removal and to the holding of the proceedings in Maine. He submitted to trial there without ever contesting venue. He has, therefore, waived the right to raise a  ____________________ 2The appellant also claims that the evidence fails to show that he conspired to distribute the drugs in Maine. We reject ________ this claim for the reasons discussed in Part II(B), infra, and _____ for the added reason that the indictment charges a drug distribution conspiracy that took place in "Maine, Massachusetts, and elsewhere," unanchored to a single locale. 7 venue-based challenge to his conviction.3 See United States v. ___ _____________ Cordero, 668 F.2d 32, 44-45 (1st Cir. 1981); see also Fed. R. _______ ___ ____ Crim. P. 12(b)(2) (mandating waiver of most defenses that could have been, but were not, raised prior to trial). In all events, the argument fails on the merits. The venue requirement is designed to prevent a criminal defendant from having to defend himself in a place that has no meaningful connection to the offense with which he is charged. This court held in United States v. Uribe, 890 F.2d 554 (1st Cir. 1989), ______________ _____ that in a conspiracy case venue is proper in any district in which an act in furtherance of the charged conspiracy has taken place, even if a particular coconspirator was not himself physically present in that district. See id. at 558. The ___ ___ actuation of a drug distribution conspiracy culminates in the sale and delivery of the controlled substance. Thus, any place in which the culmination occurs provides a lawful venue for the prosecution of the offense. See id. ___ ___ In this instance, the conspirators distributed the heroin to Maine residents knowing that it would be introduced into Maine and consumed there for the most part. Moreover, on at least one occasion the appellant's cohort, Figueroa, personally delivered heroin to a Maine locus in furtherance of the  ____________________ 3The appellant's attempt to blunt this waiver by citing the alleged ineffectiveness of his trial counsel is unavailing. We have consistently held and today reaffirm that, absent exceptional circumstances (not now present), a claim of ineffective assistance of counsel cannot debut on direct appeal. See United States v. Mala, 7 F.3d 1058, 1063 (1st Cir. 1993) ___ _____________ ____ (collecting cases), cert. denied, 114 S. Ct. 1839 (1994). _____ ______ 8 conspiracy (or so the jury could have found). This single, overt act, taking place in Maine, is itself sufficient to sustain venue in the District of Maine. See id. at 558-59; Cordero, 668 F.2d ___ ___ _______ at 43. C. C. __ Variance Variance ________ The appellant claims a prejudicial variance between the indictment and the proof, and also claims that there was injurious spillover from certain evidence regarding a second conspiracy (of which he was not a member). Because these exhortations are raised for the first time on appeal we review them only for plain error. See United States v. Arcadipane, 41 ___ _____________ __________ F.3d 1, 6 (1st Cir. 1994). A close look assures us that, under the jurisprudence of plain error, neither allegation requires reversal. We start by addressing the allegation that a variance existed between the indictment and the evidence. The genesis of the claim is as follows. Near the end of the trial, the attorneys presented a stipulation to the court. The stipulation confirmed that the contraband seized from Figueroa in Maine at the time of the denouement comprised eighty-one bags "of the paper type" and fifty bags "of the plastic type." But the stipulation erroneously described the drugs as marijuana rather than heroin. It seems likely that no one noticed the misnomer 9 for the court accepted the stipulation without comment, and during closing arguments each side specifically identified the bags as containing heroin. The appellant now claims that the obvious error in the stipulation is a variance sufficient to warrant vacation of the conviction. We do not agree. The key datum surrounding a claim of variance is whether the purported variance is sufficiently severe to affect the substantial rights of the accused. See id. at 6-7. Passing ___ ___ the point of whether a criminal defendant ever can predicate a ____ claim of variance on the introduction of evidence to which he has stipulated, the claimed variance is more apparent than real. The record discloses that the reference to "marijuana" was an isolated event. The indictment, the opening statements, the trial testimony, the summations, and the district court's jury instructions all spoke exclusively and unambiguously of heroin  not marijuana. Moreover, there is nothing in the trial transcript that suggests any basis for a claim that the appellant was either misled or surprised and he has not broached any such theory in his appellate briefs. A criminal defendant is entitled to a fair trial, not necessarily a perfect one. Viewed in the context of the whole record, the misstatement is at worst the type of minor defect that cannot plausibly be said to impact a defendant's substantial rights. See, e.g., United States v. Fermin Castillo, 829 F.2d ___ ____ ______________ ________________ 1194, 1196-97 (1st Cir. 1987) (reaching a similar conclusion when the indictment misstated the name of the bank that issued 10 material documents and mischaracterized the purpose for which these documents were used). Since the stipulated misstatement did not deprive the appellant of his due, plain error is plainly lacking. In a related vein, the appellant raises an issue of spillover from one conspiracy to another. We find this claim hard to follow. In virtually all cases involving allegations of prejudicial spillover the trial involves more than one defendant or more than one count. See, e.g., United States v. Wihbey, 75 ___ ____ ______________ ______ F.3d 761, 774-75 (1st Cir. 1996); United States v. Boylan, 898 _____________ ______ F.2d 230, 248 (1st Cir.), cert. denied, 498 U.S. 849 (1990). _____ ______ Here, however, the appellant stood trial alone on a single charge and the only evidence admitted at the trial was evidence deemed relevant to his guilt or innocence on that charge. Thus, the claim of prejudicial spillover is a non sequitur. In a vain effort to overcome this incongruity, the appellant suggests that his dealings with Figueroa were entirely distinct from Soto's dealing with Figueroa, and that the evidence anent the Soto-Figueroa dealings "spilled over" and prejudiced the jury against him. This view misconceives both the law of conspiracy and the rules of evidence. It is settled that members of a conspiracy need not all know each other, work side by side, or otherwise march in lockstep. See, e.g., United States v. ___ ____ ______________ Sepulveda, 15 F.3d 1161, 1191 (1st Cir. 1993), cert. denied, 114 _________ _____ ______ S. Ct. 2714 (1994); United States v. Rivera-Santiago, 872 F.2d _____________ _______________ 1073, 1079 (1st Cir.), cert. denied, 492 U.S. 910 & 493 U.S. 832 _____ ______ 11 (1989). The government's theory here, as limned in the indictment and bill of particulars, posited a single conspiracy with Figueroa as a linchpin. The court permitted the jury to hear the evidence of Soto's involvement on that basis, for the most part without objection. We discern no error in the district court's reception of the evidence. See Fed. R. Evid. 401 ___ (defining relevancy); see also United States v. Nazzaro, 889 F.2d ___ ____ _____________ _______ 1158, 1168 (1st Cir. 1989) (applying abuse of discretion test to admission of evidence). D. D. __ Sentencing Sentencing __________ The appellant's final claim is that the lower court improperly applied the career offender guideline, U.S.S.G. 4B1.1, to his case. Because this supposed bevue involves the sentencing court's interpretation of a guideline, we afford plenary review. See United States v. Winter, 22 F.3d 15, 18 (1st ___ _____________ ______ Cir. 1994). The guideline states: A defendant is a career offender if (1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense. U.S.S.G. 4B1.1 (Nov. 1992). The question before us is whether the appellant's predicate offenses crossed the two-prior-felony- convictions threshold established by 4B1.1. The appellant's criminal record as disclosed in the 12 presentence investigation report included (1) a conviction for assault and battery against a police officer, (2) a conviction for assault and battery with a dangerous weapon (a work boot), (3) multiple convictions on narcotics charges (including a charge of distributing heroin) stemming from a single arrest on March 20, 1990, and (4) another set of multiple convictions on narcotics-related charges (including possession of heroin with intent to distribute) stemming from a second arrest on April 9, 1990. The two drug arrests occurred within a few weeks of each other and they were eventually consolidated for sentencing. The appellant claims that this consolidation rendered the crimes we have listed under items (3) and (4) "related cases" and meant that they had to be treated as a single offense for purposes of 4B1.1. See U.S.S.G. 4A1.2(a)(2) & comment. (n.3). He also ___ argues that because he received a sentence of under one year on each of the assault and battery convictions, neither of them constitutes a cognizable predicate offense. Inasmuch as the appellant's second argument is clearly erroneous, we need not address the question of whether the two sets of narcotics charges constitute separate predicate offenses under the career offender guideline. U.S.S.G. 4B1.2(1) defines a crime of violence in pertinent part as "any offense under federal or state law punishable by imprisonment for a term exceeding one year that . . . has as an element the use . . . of physical force against the person of another." The appellant contends that neither of his 13 prior convictions for assault and battery satisfy the requirement of being "punishable by imprisonment for a term exceeding one year" since he received a six-month sentence on each occasion. The guideline, however, does not speak in terms of a judicial ________ judgment (the length of the sentence meted out), but, rather, in terms of a legislative judgment (the maximum punishment ___________ applicable to the offense). See U.S.S.G. 4B1.2, comment. (n.3) ___ (Nov. 1992) (explaining that a "'[p]rior felony conviction' means a prior . . . conviction for an offense punishable by death or imprisonment for a term exceeding one year, regardless of . . . the actual sentence imposed"); see also United States v. Sanchez, ___ ____ _____________ _______ 917 F.2d 607, 615 (1st Cir. 1990) (reaching the same conclusion), cert. denied, 499 U.S. 977 (1991). The offenses occurred in _____ ______ Massachusetts, and assault and battery was punishable in that commonwealth at the time by imprisonment of up to two-and-one- half years. See Mass. Gen. L. ch. 265, 13A (1990). Seen in ___ this light, the appellant's convictions for assault and battery constitute predicate offenses within the purview of the career offender guideline.4 Thus, the sentencing court did not err in treating the appellant as a career offender.  ____________________ 4The appellant argues that the later conviction for assault and battery with a dangerous weapon should be excluded because the "weapon" was a pair of work boots. We do not see what possible difference flows from this distinction. For one thing, we take a categorical approach to the examination of predicate offenses in order to determine whether they meet the requirements of the career offender guideline. See, e.g., Winter, 22 F.3d at ___ ____ ______ 18. For another thing, assault and battery is no less a crime of violence because the assailant stomps his victim rather than assaulting him in some more traditional manner. 14 III. III. ____ Conclusion Conclusion __________ We need go no further. The other assignments of error are patently meritless and do not warrant discussion. The record reflects, without serious question, that the appellant experienced a fair trial in a proper venue, and that he was lawfully convicted and sentenced. Affirmed. Affirmed. ________ 15