132 F.3d 834
 UNITED STATES, Appellee,
v.
George BERRIOS, a/k/a Antonio Candelario, Defendant-Appellant.
UNITED STATES, Appellee,
v.
Mario MENDEZ, a/k/a Pablo, Defendant-Appellant.
UNITED STATES, Appellee,
v.
Pedro GONZALEZ, a/k/a Frank Castillo-Perez, Defendant-Appellant.
UNITED STATES, Appellee,
v.
Hannover Alberto SEGURA, Defendant-Appellant.
 Nos. 95-2035, 95-2036, 95-2038, 97-1121.
 United States Court of Appeals,
First Circuit.
 Heard Oct. 6, 1997.
Decided Jan. 6, 1998.
 
 Malcolm J. Barach, Boston, MA, by appointment of the Court, for appellant George Berros.
 Jose A. Espinosa, with whom Paul F. Murphy and MacDonald & Murphy, Boston, MA, were on brief for appellant Mario Mendez.
 Paul J. Garrity, Boston, MA, by appointment of the Court, for appellant Pedro Gonzalez.
 Karl R.D. Suchecki, by appointment of the Court, with whom Jennifer Petersen and Petersen & Suchecki, Boston, MA, were on brief for appellant Hannover Alberto Segura.
 William F. Sinnott, Assistant U.S. Attorney, with whom Donald K. Stern, United States Attorney, Boston, MA, was on brief for appellee.
 Before TORRUELLA, Chief Judge, GODBOLD,* Senior Circuit Judge, and BARBADORO,** District Judge.
 GODBOLD, Senior Circuit Judge.
 
 
 1
 This appeal arises from the conviction of four defendants, Mario Mendez, Pedro Gonzalez, George Berros, and Hannover Alberto Segura of various offenses relating to possession and distribution of heroin. Their arrests and convictions were the result of an extended undercover and surveillance operation conducted by law enforcement agents seeking to discover the source of an increased heroin trade in Portland, Maine. Each defendant was convicted of participating in a conspiracy to possess and distribute heroin and various other crimes. They appeal, questioning their convictions and their sentences. We AFFIRM the convictions and sentences.
 
 FACTUAL SUMMARY
 
 2
 The following factual synopsis summarizes evidence introduced at trial. The facts are resolved in the light most favorable to the verdict and consistent with the record, as is required by our standard of review in an appeal from a final judgment of conviction. U.S. v. Maraj, 947 F.2d 520, 522 (1st Cir.1991).
 
 
 3
 Between July 8, 1994 and August 23, 1994, Agent Scott Pelletier of the Maine Drug Enforcement Agency engaged in four heroin transactions with a man named Pablo, later proved to be Mario Mendez. Pelletier had been introduced to Pablo by Lawrence Freeman, a cooperating government informant familiar with regional drug trade. Each of the four transactions took place in Lowell, Massachusetts, where all four defendants resided. In each transaction Pelletier purchased between 50 and 500 bags of heroin from Pablo. During the course of these transactions, Pelletier saw Gonzalez accompanying and assisting Mendez several times and witnessed Segura conducting counter-surveillance at two different locations on July 8, 1994. After the fourth transaction between Pelletier and Mendez, which took place at a residence located at 36 Park Street, law enforcement officers began arresting individuals involved. Gonzalez was found hiding near the Merrimack River, and Mendez was arrested outside 36 Park Street, later shown to be the location of the heroin "store" that the conspiracy operated.
 
 
 4
 The police then executed a search warrant for 173 University Avenue, also in Lowell, Massachusetts. Based on extensive surveillance and investigation the officers had identified numerous phone calls between the residence of Mendez and 173 University Avenue and between 36 Park Street and 173 University. Upon entering the apartment they observed Segura running from the bathroom where plastic bags containing white powder were going down the toilet. Also, within 173 University Avenue, the officers seized numerous items of drug distribution paraphernalia, including scales, sieves, and a "No Way Out" stamp used for labeling the type of heroin purchased by Pelletier from Mendez. They also found a large amount of cash, 107.6 grams of crack cocaine and a loaded .357 Magnum handgun.
 
 
 5
 Police next executed a search warrant at 205 and 203 University Avenue where they arrested George Berros, the resident. There the officers seized large amounts of heroin, crack cocaine, and various items identified as distribution paraphernalia and found a notebook containing the telephone number for 173 University Avenue.
 
 
 6
 Other evidence at trial included the testimony of Christopher Coughlin, who admitted purchasing heroin and crack from the defendants. Coughlin identified Mendez as Pablo and Gonzalez as a man who participated in the transactions but whose name he did not know.
 
 
 7
 After a nineteen day trial, the jury returned a verdict convicting each defendant of various counts of the nine count indictment. All appellants were convicted of Count I, which charged that the defendants had participated in a conspiracy to possess with intent to distribute and to distribute heroin in violation of 21 U.S.C. § 846. After considering the presentencing report of probation officers, as well as the objections of both parties to the report, the district court sentenced the four defendant to various prison terms ranging from 84 months for Berros to 151 months for Mendez.
 
 DISCUSSION
 
 8
 We have considered the arguments of each defendant and find no error in their convictions or sentences. Accordingly, we affirm. Because each individual raises different and numerous issues and each is represented by different counsel, we will address the contentions of each defendant separately with some necessary repetition.
 
 I. Mendez
 
 9
 Mendez was convicted of Counts I-V, consisting of various charges relating to possession and conspiracy to possess heroin and cocaine with the intent to distribute. He was sentenced to 151 months for each conviction to be served concurrently. The sentence was the result of several enhancements which Mendez contests and a significant downward departure. The district court explained the downward departure by noting that the lengthy sentences for possession of cocaine base (crack) were unjustified because the conspiracy was primarily one to distribute heroin rather than crack. The court found that, by including the amount of confiscated crack cocaine in the sentencing calculation, the sentence of each defendant was increased by as much as six levels. The court acknowledged that its reason could be construed as a discouraged ground for departure but found that the case fell out of the heartland of prescribed conduct, thus warranting departure. This downward departure is not questioned by the government; therefore, we do not reach whether it was proper. The departure resulted in an offense level of 35 for Mendez. Based on his criminal history category he received a 151 month sentence.
 
 
 10
 We affirm Mendez's convictions and sentences.
 
 A. Testimony of defense witness Fortin
 
 11
 Mendez contends that his conviction should be reversed because he was precluded from offering the testimony of Loretta Fortin. The essence of her testimony would have been that Mendez was not the "Pablo" she was introduced to during a drug sale in June of 1994. Furthermore, Mendez called Fortin to discuss her meeting with Special Agent Connick in August of 1994, during which she identified the photograph of another defendant as Pablo. The relevancy of this testimony is that an individual named Pablo was the supposed leader of the conspiracy and the dealer with whom the government initially dealt. Differences existed as to which member of the conspiracy was actually Pablo, but several witnesses testified that Mendez was in fact Pablo and that Mendez carried a beeper with the number belonging to Pablo.
 
 
 12
 The substance of Loretta Fortin's proposed testimony was that she had one meeting with Pablo in which he entered the back seat of her car while she remained in the front. Her husband introduced the man as Pablo, and they conducted a drug transaction. Fortin was willing to testify that Mendez was not the Pablo that entered her car and that she selected a different defendant as Pablo from police photographs. The court excluded this testimony because it was based on the inadmissable hearsay of the introduction of Pablo by her husband. Mendez contends that this exclusion was erroneous because Federal Rule of Evidence 801(d)(1)(C) provides that if a witness is available for cross examination, prior statements of identification are not hearsay. This assertion misses the point. Fortin's proposed testimony about her husband's introduction of Pablo created the hearsay problem, not her prior identification statements to Agent Connick. To make her testimony credible she had to admit that her knowledge of Pablo's identity was based on the hearsay statement of her husband--"this is Pablo."
 
 
 13
 By echoing her husband's introduction of Pablo, Fortin's proposed testimony meets the prerequisites of hearsay. The introduction of Pablo is a statement not made by the declarant in testimony offered to prove the truth of the matter asserted. For Loretta Fortin's testimony to be tenable the statement made by her husband must have been true. Because we have no way of verifying that Mr. Fortin was sufficiently familiar with Pablo to identify him to Mrs. Fortin, her testimony about Pablo is classic hearsay and was properly excluded.
 
 
 14
 Accordingly, the district court did not err in disallowing Fortin's testimony on hearsay grounds. Moreover, if error, it would have been harmless. Even if the introduction was not hearsay, given Fortin's limited interaction with Pablo, the weight of her testimony could not overcome the substantial testimony of other credible witnesses who had more contact with Mendez/Pablo and who testified that Mendez was in fact Pablo. See U.S. v. Southard, 700 F.2d 1, 21 (1st Cir.1983) (harmless error to improperly exclude admissible evidence as hearsay where substantial evidence existed to convict defendant).
 
 
 15
 B. Mendez' sentence was based on acquitted conduct
 
 
 16
 Mendez also challenges the fact that his sentence was based in part on acquitted conduct. Specifically, he asserts that the crack cocaine seized by the officers during the arrests should not have been considered for sentencing purposes because he was acquitted on all counts involving possession or distribution of cocaine. This assertion has no merit because "a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence." U.S. v. Watts, --- U.S. ----, ----, 117 S.Ct. 633, 638, 136 L.Ed.2d 554 (1997).
 
 C. Enhancement of Mendez' sentence
 
 17
 i. Mendez' role as an organizer or leader
 
 
 18
 The evidence was not insufficient to support Mendez' four-level enhancement as an organizer or leader of the conspiracy as provided by U.S.S.G § 3B1.1(a). Evidence showed that Mendez was always the person contacted when heroin was to be purchased, and that he always returned pager calls. He set prices and determined the location of the transactions. Witnesses testified that it appeared that men who accompanied Mendez were his subordinates and that he hired a person to man the heroin "store" at 36 Park Street from 9:00 a.m. to 6:00 p.m. daily. Other evidence offered by the government in its objection to the presentence report tended to suggest that Mendez was in fact the leader of a conspiracy that consisted of five or more individuals.
 
 
 19
 We will not reverse a district court's finding of fact regarding the role of the defendant unless it is clearly erroneous or based on a mistake of law. U.S. v. Cali, 87 F.3d 571, 574 (1st Cir.1996). Based on the extensive evidence offered at trial and to the sentencing court that Mendez was in fact an organizer and a leader, we hold that the court's sentencing was not clearly erroneous.
 
 
 20
 ii. Transacting of drug sales in a school zone
 
 
 21
 Mendez questions his one-level enhancement for transacting a drug sale in a school zone on the ground that evidence of the proximity of a school to any drug transaction was not introduced at trial. However, the record indicates that such evidence was introduced at the sentencing hearing and was not objected to by any defendant. The evidence supporting the school zone enhancement consisted of an affidavit signed by Special Agent Bruce Tavers stating that the drug transactions at Fort Hill Park in Lowell, Massachusetts took place within one thousand feet of a junior high school.
 
 
 22
 At a sentencing hearing the court may consider evidence that would be inadmissable at trial so long as the sentencing court determines that the evidence has a "sufficient indicia of reliability to support its probable accuracy." U.S. v. Tardiff, 969 F.2d 1283, 1287 (1st Cir.1992). The affidavit of a law enforcement officer familiar with the locale of the drug transaction and the surrounding area is sufficiently reliable that a court can accept it as evidence for sentencing purposes. Mendez did not object to this evidence, and we find no plain error. The affidavit was properly admitted to support the one-level school zone enhancement.
 
 
 23
 iii. Codefendant's possession of a firearm
 
 
 24
 Mendez' two-level enhancement for possession of a firearm during the drug offense was not error although he never actually possessed or used a gun during any of the drug transactions. He was arrested at a different locale from where the gun was found, but evidence showed that he was seen exiting the residence where the gun was found, that he had made many calls to this residence, that the residents were coconspirators, and that the residence was a center for the drug operation. These facts are sufficient for the enhancement because the sentencing guidelines require only that a gun be present during some portion of an ongoing crime. See U.S.S.G. § 2D1.1(b)(1), commentary at n.3. Because the defendants were convicted of a continuing conspiracy the firearm was present during the crime.
 
 
 25
 Once the presence of a weapon is established enhancement is proper unless the defendant demonstrates special circumstances that show a clear improbability that the weapon was connected to the drug offense. U.S. v. Lagasse, 87 F.3d 18, 22 (1st Cir.1996). The government offered proof that the gun was present during the drug conspiracy, and the defendant did not offer any special circumstances that would make the connection between the gun and the crime improbable; therefore, the enhancement was proper.[1]
 
 II. Gonzalez
 
 26
 Pedro Gonzalez was convicted of Counts I, IV, and V consisting of various charges relating to possession and conspiracy to possess heroin with intent to distribute. He was sentenced to 135 months concurrent for each conviction. His original sentence was calculated by his being held responsible for 113.7 grams of crack cocaine and 307 grams of heroin, resulting in a base offense level of 33. He was then given a two-level adjustment for obstruction of justice for providing a false name and personal history and a two-level enhancement for possession of a firearm during a drug trafficking offense, resulting in a total offense level of 37. The district court departed downward four levels because it found that the conspiracy was primarily for the distribution of heroin rather than crack cocaine. Because he found that the crack offenses were outside the heartland offenses under the applicable guideline, he granted a four-level downward departure, resulting in a new base offense level of 33. After the court considered his criminal history category, he was sentenced to 108 months in prison. We affirm his sentence.
 
 A. Obstruction of justice enhancement
 
 27
 Gonzalez contends that he did not deserve a two-level enhancement for obstruction of justice because the false statements he made concerning his identity did not amount to materially false information as required by U.S.S.G. § 3C1.1. Section 3C1.1 provides that a two level enhancement for obstruction is proper where a defendant provides "materially false information" to a judge, magistrate or a probation officer. U.S.S.G. § 3C1.1, commentary at n.3(f) & (h). For information to be material it need only have the potential to affect the issue under determination, including incarceration period, condition of release, or whether the wrongful conduct has been mitigated in some way. U.S.S.G. § 3C1.1, commentary at n.5; U.S. v. Kelley, 76 F.3d 436, 441 (1st Cir.1996).
 
 
 28
 By offering a false name, date of birth, and personal history throughout the trial and during sentencing Gonzalez hid a prior conviction, his age, his residence, and the fact that he was seeking to defraud immigration officials by participating in a sham marriage for the purpose of obtaining citizenship. The substance and nature of these misrepresentations are material for their potential to affect sentencing determinations. Because the falsehoods "could have impacted the decisions of the sentencing court" the two-level enhancement for obstruction of justice was proper. Kelley, 76 F.3d at 441.
 
 
 29
 B. Failure to prove the substance found was crack cocaine
 
 
 30
 The government did not fail to sustain its burden of proving that the substance confiscated from the conspiracy was actually crack cocaine rather than some other form of cocaine. Gonzalez did not argue at trial that the substance may have been some other form of cocaine than crack, thus we would have to find plain error. We cannot find plain error unless the desired factual finding is the only one rationally supported by the record below. See U.S. v. Olivier-Daz, 13 F.3d 1, 5 (1st Cir.1993). Gonzalez did not offer any evidence to combat the government's assertion that the substance was crack. Only if the record clearly showed that the substance could not have been crack would we be justified in finding plain error. Id. Because the record supports the district court's finding for sentencing purposes, there was no plain error.C. Ineffective assistance of counsel
 
 
 31
 Nothing in the record supports Gonzalez' assertion that he was denied effective assistance of counsel when his attorney advised him that he could not receive a lesser sentence by pleading guilty to the crime. "We have held with a regularity bordering on the monotonous that fact-specific claims of ineffective assistance cannot make their debut on direct review of criminal convictions, but, rather, must originally be presented to, and acted upon by, the trial court." See U.S. v. Mala, 7 F.3d 1058, 1062-63 (1st Cir.1993); U.S. v. McGill, 952 F.2d 16, 19 (1st Cir.1991).
 
 
 32
 Since claims of ineffective assistance involve a binary analysis--the defendant must show, first, that counsel's performance was constitutionally deficient and, second, that the deficient performance prejudiced the defense, such claims typically require the resolution of factual issues that cannot efficaciously be addressed in the first instance by an appellate tribunal. In addition, the trial judge, by reason of his familiarity with the case, is usually in the best position to assess both the quality of the legal representation afforded to the defendant in the district court and the impact of any shortfall in that representation. Under ideal circumstances, the court of appeals should have the benefit of this evaluation; elsewise, the court, in effect, may be playing blindman's buff.
 
 
 33
 Mala, 7 F.3d at 1062-63 (citation omitted). This court has dismissed without prejudice portions of an appeal relating to an ineffective assistance claim and suggested that the defendant should litigate such a claim through the medium of an application for post-conviction relief. See Mala, 7 F.3d at 1063. Because we have no factual record upon which to judge Gonzalez' claims of ineffective assistance, we reject this claim for now and suggest that the proper forum for his claim is through application for post-conviction relief.
 
 III. Berros
 
 34
 George Berros was convicted of Counts I, VI, and VII consisting of various charges relating to possession and conspiracy to possess heroin and cocaine with intent to distribute. He was sentenced to 84 months concurrently. His original sentence was calculated by holding him responsible for 26.08 grams of crack cocaine and 307 grams of heroin which resulted in a base offense level of 30. He was then given a two-level adjustment for obstruction of justice for providing a false name and personal history, resulting in a total offense level of 32. The court then departed downward between three and four levels based on reasoning discussed previously concerning the nature of the conspiracy. After consideration of his criminal history category, Berros was sentenced to 84 months.
 
 
 35
 Berros questions both his conviction and sentence. We affirm both.
 
 A. Sufficiency of the evidence
 
 36
 Berros argues that the evidence presented was insufficient to sustain his conviction for conspiracy. He says that the government presented no evidence that he assented to be a part of the conspiracy or participated in the conspiracy to distribute heroin. We customarily must decide whether the evidence, considered in the light most favorable to the government--"a perspective that requires us to draw every plausible inference in line with the verdict and to resolve every credibility conflict in the same fashion"--would allow a rational jury to find that guilt was proved beyond a reasonable doubt. U.S. v. Santiago, 83 F.3d 20, 23 (1st Cir.1996).
 
 
 37
 Sufficient evidence existed for the jury to find that Berros was a member of the conspiracy. Police officers observed him carrying several bags of heroin and found large amounts of drugs and distribution paraphernalia at his residence. Furthermore, the sentencing court found that Berros was the supplier of heroin to Mendez and the other conspirators. We reject Berros' contention that the evidence showed only that a buyer-seller relationship rather than a conspiracy existed between him and Mendez.
 
 
 38
 Whether a true conspiracy exists turns on whether the seller knew that the buyer was reselling the drugs and intended to facilitate those resales. Santiago, 83 F.3d at 23-24. Therefore, knowledge and intent are the touchstones for sufficiently proving a conspiracy. The government presented sufficient evidence to show that Berros knew that Mendez and his associates were reselling the heroin and that he intended to aid these transactions by supplying large amounts of heroin to the conspiracy. Evidence of Berros' involvement in the conspiracy was sufficient for a reasonable jury to convict.
 
 B. Obstruction of justice enhancement
 
 39
 Much like appellant Gonzalez, Berros challenges that portion of his sentence resulting from a two-level enhancement for obstruction of justice. He contends that the false information he provided to the government was not material and did not significantly impede investigation or prosecution as required by the guidelines for an obstruction enhancement. Once again we reject this argument. Berros not only presented a false name to the magistrate judge and district court throughout trial, but he hid the status of his citizenship by claiming to come from Puerto Rico. By hiding his true identity Berros concealed that he had previously been arrested by the Immigration and Naturalization Service in 1991 and had fled after posting bail.
 
 
 40
 For information to be material it need only have the potential to affect an issue under determination, including incarceration period, condition of release, or whether the wrongful conduct has been mitigated in some way. U.S.S.G. § 3C1.1, commentary at n.5; U.S. v. Kelley, 76 F.3d 436, 441 (1st Cir.1996). Giving a false identity and pretending to be a citizen of this country, as well as concealing facts that made Berros a known flight risk, could have affected some issue under determination by the court, including bail. Although he provided his real identity to the probation officer prior to the preparation of the presentencing report and the sentencing hearing, Berros had participated in an entire criminal trial under a false name and status, which amounted to an obstruction of justice.
 
 
 41
 C. Sentencing Guidelines and the equal protection clause
 
 
 42
 Berros contends that the court enforced "a vague law" when it refused to treat crack cocaine as equal to powder cocaine for sentencing purposes. Berros noted that the U.S. Sentencing Commission has prepared a report demonstrating the disparity that exists between the sentencing guidelines for powder cocaine and crack cocaine. We are bound by the prior decisions of this circuit which have rejected this argument. See, e.g., U.S. v. Andrade, 94 F.3d 9, 14-15 (1st Cir.1996); U.S. v. Singleterry, 29 F.3d 733, 739-41 (1st Cir.1994). Until the en banc court of this circuit, the U.S. Supreme Court, or Congress itself accepts this assertion of disparity and finds it untenable, challenges to the sentencing guidelines based on the disparity between sentences for crack cocaine and powder cocaine will continue to fail. See Irving v. U.S., 49 F.3d 830, 833-4 (1st Cir.1995); U.S. v. Wogan, 938 F.2d 1446, 1449 (1st Cir.1991).
 
 IV. Segura
 
 43
 Segura was convicted by a jury of Counts I and II consisting of various charges relating to possession and conspiracy to possess heroin and cocaine with the intent to distribute. He was sentenced to 108 months for each conviction concurrently. His original sentence was calculated by holding him responsible for 113.7 grams of crack cocaine and 307 grams of heroin, resulting in a base offense level of 32. He was then given a one-level adjustment for transacting drug sales in a school zone and a two level enhancement for possession of a firearm during the offense, this resulting in a total offense level of 35. The court then departed downward four levels based on the reasoning discussed above concerning the nature of the conspiracy. After consideration of his criminal history category, Segura was sentenced to 108.
 
 
 44
 He challenges his conviction and sentence and we affirm both.
 
 A. Sufficiency of the evidence
 
 45
 Segura maintains that the evidence presented at trial was insufficient to establish that he knowingly and intentionally possessed heroin with the intent to distribute it or conspired to do so. In considering whether sufficient evidence to convict exists, we must consider the evidence in the light most favorable to the verdict and reverse only if no rational trier of fact could have found him guilty. U.S. v. Santiago, 83 F.3d 20, 23 (1st Cir.1996). The fact that the entire case against Segura is based on circumstantial, rather than direct, evidence has no bearing on sufficiency; both types of evidence provide an adequate basis for conviction. See U.S. v. Valerio, 48 F.3d 58, 63 (1st Cir.1995).
 
 
 46
 The government presented two pieces of evidence that tended to link Segura to the conspiracy. First was the testimony of Agent Scott Pelletier of the Maine Drug Enforcement Agency, who identified Segura as the person engaged in counter-surveillance during at least one of the drug transactions. Pelletier was the undercover agent who participated in these transactions, and his testimony about the possibility of counter-surveillance was corroborated by a videotape that showed a car suspiciously circling the area where the drug transaction took place.
 
 
 47
 Second was testimony of officers on the scene when Segura and others were arrested at 173 University Avenue. Officers testified that they saw Segura running from the bathroom and heard the toilet flushing and Inspector Robert Reyes testified that when he ran into the bathroom he saw plastic bags containing a white powdery substance go down the toilet. After Segura and others were arrested the police found drugs, numerous items of distribution paraphernalia and a loaded .357 Magnum at the scene.
 
 
 48
 Taken together, Pelletier's identification of Segura as the counter-surveillance man and Reyes' testimony about the toilet were sufficient to convict. Construing this evidence in favor of the government, Segura's presence at two of the drug transactions, his presence at what appears to be the drug conspiracy's center of operations, and his attempt to dispose of evidence of the conspiracy, taken together show that he had knowledge of the conspiracy and that he intended to participate in it. See U.S. v. Santiago, 83 F.3d 20, 23 (1st cir.1996) (knowledge and intent are touchstones of conspiracy conviction). We cannot say that no reasonable jury could have found him guilty.
 
 B. Segura's sentence
 
 49
 i. A codefendant's possession of a firearm
 
 
 50
 Segura, like Mendez, contends that he should not have received a two-level enhancement for possession of a firearm during the drug offense because he never actually possessed or used a gun. He was arrested at the residence where the gun was found, and evidence existed that this residence was the center of operations for the drug conspiracy. These facts are sufficient. The sentencing guidelines require only that a gun be present during some portion of an ongoing crime. See U.S.S.G. § 2D1.1(b)(1), commentary at n.3. Because the defendants were convicted of a continuing conspiracy, the firearm was present during the crime.
 
 
 51
 Once the presence of a weapon is established enhancement is proper unless the defendant demonstrates special circumstances that show a clear improbability that the weapon was connected to the drug offense. U.S. v. Lagasse, 87 F.3d 18, 22 (1st Cir.1996). Segura did not offer any special circumstances that would make the connection between the gun and the crime improbable. The enhancement was proper.
 
 
 52
 ii. Transaction of a drug sale in a school zone
 
 
 53
 Segura argues that the government did not offer any reliable proof that any of the drug sales took place within a protected zone. He acknowledges that the government offered the affidavit of Special Agent Bruce Tavers as proof of the proximity of a junior high school; however, he says that this proof is insufficient because it lacked an evidentiary foundation.
 
 
 54
 In this circuit a sentencing court may consider evidence that would be inadmissable at trial under the rules of evidence so long as the sentencing court determines that the evidence has a "sufficient indicia of reliability to support its probable accuracy." U.S. v. Tardiff, 969 F.2d 1283, 1287 (1st Cir.1992). The affidavit of a law enforcement officer who is familiar with the locale of the drug transaction and the surrounding area is sufficiently reliable that a court can accept it as evidence for sentencing purposes. Segura's enhancement for transacting drug sales within a school zone was sufficiently supported and proper.
 
 
 55
 iii. Segura's sentence was partially based on acquitted conduct
 
 
 56
 Segura also challenges the fact that his sentence was, in part, based on acquitted conduct, i.e., his sentence calculation should not have included the amount of crack cocaine found at the arrest scene because he was acquitted of all charges involving possession or distribution of crack cocaine. "A jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence." U.S. v. Watts, --- U.S. ----, ----, 117 S.Ct. 633, 638, 136 L.Ed.2d 554 (1997).
 
 CONCLUSION
 
 57
 We AFFIRM the convictions and sentences of all appellants.
 
 
 
 *
 Of the Eleventh Circuit, sitting by designation
 
 
 **
 Of the District of New Hampshire, sitting by designation
 
 
 [1]
 Mendez mentions Bailey v. U.S., 516 U.S. 137, 147-51, 116 S.Ct. 501, 508-09, 133 L.Ed.2d 472 (1995), as authority that the enhancement was improper, but Bailey has been construed as not affecting sentencing enhancements based on the possession of firearms during certain offenses. See U.S. v. Gary, 74 F.3d 304, 317 n. 11 (1st Cir.), cert. denied, --- U.S. ----, 116 S.Ct. 2567, 135 L.Ed.2d 1084 (1996). Bailey only restricted convictions under 18 U.S.C. § 924(c)(1) to those instances where a defendant actively employed a firearm during the offense. Bailey, 516 U.S. at 147-51, 116 S.Ct. at 508-09 (recognizing that sentencing guidelines may provide enhancements for mere possession of a firearm during other offenses)