USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 98-1900

 UNITED STATES OF AMERICA,

 Appellee,

 v.

 ALAN A. AKER,

 Defendant, Appellant.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. Robert E. Keeton, U.S. District Judge]

 Before

 Torruella, Chief Judge,
 
 Campbell, Senior Circuit Judge,
 
 and Boudin, Circuit Judge.
 
 
 
 
 Lois M. Farmer, by appointment of the court, with whom Garnick
& Scudder, P.C. was on brief for appellant.
 James F. Lang, Assistant United States Attorney, with whom
Donald K. Stern, United States Attorney, was on brief for the
United States.

June 28, 1999

 
 

 BOUDIN, Circuit Judge. Alan Aker pled guilty to two drug
offenses and one firearms offense and was sentenced to 121 months
in prison. He now appeals, saying that the district judge should
have allowed him to withdraw his guilty plea and that the judge
erred in fixing his sentence. The facts that follow are drawn from
the pre-sentence report and the testimony in the district court. 
United States v. Egemonye, 62 F.3d 425, 426 (1st Cir. 1995).
 In September 1993, the police obtained a warrant to
search Aker's house and car for cocaine and paraphernalia. After
watching Aker conduct from his car an apparent drug transaction,
the police searched the car, finding two bags of cocaine (a total
of 6.7 grams) in the driver's-side ashtray, a handgun in the glove
compartment, and an additional 27.3 grams of powder cocaine and
26.6 grams of crack cocaine hidden in a cooler in the back of the
car. On his arrest Aker was carrying $1,084 in cash, and a search
of his house revealed another 1.33 grams of crack cocaine and seven
firearms, four of which were stolen. 
 Aker was then indicted by a grand jury and released
pending trial. By a superceding indictment returned in September
1994, Aker was charged with four offenses: possession with intent
to distribute cocaine, 21 U.S.C. 841(a)(1); possession with intent
to distribute cocaine base, id; use and carriage of a firearm
during and in relation to a drug trafficking crime, 18 U.S.C.
924(c); and possession of stolen firearms, 18 U.S.C. 922(j). 
These charges were pending against him when his trial began about
a year later.
 After his indictment but before trial, the police
witnessed another apparent drug transaction involving Aker. On
March 14, 1995, a confidential informant set up a monitored
purchase with Aker, who told the informant that he (Aker) would
leave an agreed-upon amount of drugs under a designated dumpster. 
After the confidential informant provided Aker with the money, the
police found the designated drugs (6.5 grams of crack cocaine)
under the dumpster. This incident was not included in Aker's
indictment and conviction, but it was considered relevant conduct
for the purposes of sentencing.
 At Aker's trial in June 1995, Aker's lawyer admitted in
his opening that the drugs in the front of Aker's car belonged to
Aker but said they were intended for personal use and that Aker
knew nothing of the drugs in the back; the latter, said counsel,
had been placed there by Tony Jones, the boyfriend of Aker's sister
Karen. Two days later, as the trial continued, the prosecutor
advised the defense that he had learned that Tony Jones was an
informant for the Fitchburg police and that Jones had denied owning
the drugs in the back of the car; instead, Jones claimed to have
agreed with Aker to testify falsely that the drugs belonged to
Jones.
 Aker then struck a deal with the government, which agreed
to dismiss the firearm count under section 924(c) in exchange for
Aker's guilty plea on the other three counts. Since section 924(c)
carries a mandatory consecutive sentence of five years, 18 U.S.C.
924(c)(1)(A)(i); U.S.S.G. 2K2.4, the benefit of the bargain to
Aker was obvious. The judge conducted a change of plea hearing in
which Aker admitted that he had committed the drug crimes charged
in the indictment and had known that firearms kept in his house
were stolen. The judge accepted the guilty pleas to the three
counts in question, dismissed the 924(c) count, and ordered a pre-
sentence report.
 The first pre-sentence report (there were later
amendments) was issued in August 1995 and was contested in several
respects by Aker's attorney. Delays then ensued. Aker's trial
attorney withdrew in January 1996, and in April 1996, Aker filed a
pro se motion to withdraw his guilty plea. A new defense counsel
was appointed and a psychological evaluation obtained for Aker. On
April 6, 1998, the district court held a hearing on Aker's motion
to withdraw the guilty plea and received testimony--discussed
below--from Aker, his sister Deborah, and Dr. Ebert, the
psychologist retained to examine Aker.
 Following the hearing, the district court denied Aker's
motion to withdraw his guilty plea. Thereafter, Aker filed a
motion in May 1998, requesting a downward departure. At sentencing
on July 15, 1998, the district court denied the departure request
and also refused to make a reduction in the offense level for
acceptance of responsibility. Instead, attributing to Aker the
drugs seized in September 1993 and March 1995, the court computed
the base offense level at 28, enhanced this figure two levels for
possession of the gun found in the glove compartment, and sentenced
Aker (at the bottom of the resulting range) to 121 months.
 On appeal, Aker's first claim is that the district court
erred in refusing to allow him to withdraw his guilty plea. The
district court may permit withdrawal of a guilty plea before
sentencing if the defendant shows this to be "fair and just," Fed.
R. Crim. P. 32(e); but the district court's findings of fact are
reviewed only for clear error, and "we accord considerable
deference to the firsthand assessment ultimately made by the
district court, which must be affirmed absent a demonstrable abuse
of discretion." United States v. Marrero-Rivera, 124 F.3d 342, 348
(1st Cir. 1997).
 There is no exclusive list of reasons that might allow
withdrawal of a plea, but a primary concern is whether the original
guilty plea was knowing, intelligent and voluntary under Fed. R.
Crim. P. 11. Marrero-Rivera, 124 F.3d at 347. Other factors
commonly mentioned are the plausibility and weight of the reason
given for the withdrawal, the timing of the request, whether the
defendant is now colorably asserting legal innocence, and whether
the original plea was pursuant to a plea agreement (and thus, in
the usual case, gained something for the defendant). Id. 
 When Aker pled guilty in 1995, Rule 11 was followed to
the letter, and Aker squarely admitted that all of the drugs in the
car were his and that he knew that some of the guns in the house
had been stolen. Aker's best argument for involuntariness is, as
Dr. Ebert testified, that at the time of the plea Aker was
depressed over his wife's death (which allegedly led to his
involvement in drugs), had gone without sleep during the trial, and
had difficulty concentrating. Further, says Aker, his attorney had
indicated that Aker was headed for conviction and stressed the
benefit of getting the section 924(c) count dismissed. All of
this, it is argued on appeal, made his plea less than voluntary.
 However, Dr. Ebert testified only that Aker was depressed
and the district judge found that Aker "was never depressed to a
degree that deprived him of the capacity to make a knowing and
voluntary choice . . . ." The district court also discounted Dr.
Ebert's testimony because the court found it was based in part on
crediting statements Aker made to Dr. Ebert, statements that the
court said were materially false. No doubt at some point mental
afflictions can undermine a guilty plea, but in this instance the
district court's assessment was certainly not clearly erroneous.
 Aker also says that he did not understand that dismissal
of the section 924(c) count left the district judge free in
computing the sentence to add two levels because the gun was found
in the glove compartment. U.S.S.G. 2D1(b)(1). The two-level
adjustment, which the judge might or might not find warranted, was
a far cry from a mandatory five year minimum sentence, to be served
consecutively to other sentences, that would have followed
automatically from a conviction under section 924(c). Whatever
Aker may have supposed, he got just what the government promised,
namely, a dismissal of the section 924(c) charge. A guilty plea is
not vulnerable merely because the defendant's own expectations as
to the guideline range go amiss.
 Aker's other potential argument in favor of withdrawal,
although not much stressed on this appeal, was a claim of innocence
at least as to the drugs in the back of the car, including the
crack that gave rise to a heavy sentence. At the change of plea
hearing, Aker testified--contrary to his earlier alibi--that the
drugs belonged to his sister, Deborah. What made this less
farfetched was that Deborah also so testified at the hearing,
although her version of events would have made her guilty only of
possession and not of trafficking. It is enough to say that the
district judge was not clearly erroneous in choosing to credit
Aker's outright admission in the plea hearing that all of the drugs
were his.
 Aker himself admitted that his desire to withdraw the
guilty plea was prompted, at least in part, by two other factors.
One was that, contrary to Aker's hope, Congress failed to agree to
a proposed reduction in the guideline sentences for crack cocaine. 
The other was that the Supreme Court's intervening decision in
Bailey v. United States, 516 U.S. 137 (1995), stiffening the
requirements for conviction under section 924(c), made the
dismissal of that count somewhat less valuable than at first
appeared. Neither of these motives goes to the voluntariness of
the plea or Aker's guilt on the counts to which he pled guilty, and
both suggest that Aker's involuntariness claim owed something to an
after-the-fact recalculation of risks and rewards.
 Aker's next ground of appeal is his claim that the
district court miscalculated his guideline range in three different
respects: the firearms enhancement, the obstruction of justice
enhancement, and the denial of a reduction for acceptance of
responsibility. We review the district court's findings of fact in
sentencing for clear error, see United States v. McDonald, 121 F.3d
7, 9 (1st Cir. 1997), cert. denied, 118 S. Ct. 725 (1998), and
determinations of law de novo, see United States v. Fontana, 50
F.3d 86, 87 (1st Cir. 1995). Departure denials are subject to more
restricted review.
 Starting with the firearms enhancement, the critical
point is that section 924(c)'s "use or carry" language and the
restrictive gloss from Bailey are not used in the guideline. 
Instead, U.S.S.G. 2D1.1(b)(1) prescribes a two-level enhancement
for drug trafficking crimes "[i]f a dangerous weapon (including a
firearm) was possessed," and the commentary explains that
possession alone is enough; because of the increased danger posed,
the enhancement should be applied "if the weapon was present,
unless it is clearly improbable that the weapon was connected with
the offense." U.S.S.G. 2D1.1, app. note 3; United States v.
Berrios, 132 F.3d 834, 839 (1st Cir. 1998). 
 Here, Aker had the gun in the glove compartment of his
car while transporting and dealing drugs. The claim that he merely
possessed drugs for his own use was refuted by his guilty plea and
by his witnessed involvement in at least one, and arguably two,
sales. This is nothing like the case, which the guideline note
says does not warrant enhancement, of a defendant arrested at home
who happens to have "an unloaded hunting rifle in the closet." 
U.S.S.G. 2D1.1, app. note 3. In all events, the district court
did not clearly err in finding that the gun was present and in
explicitly declining to find that weapon was unconnected with the
offense.
 Aker next attacks the two-level enhancement imposed under
U.S.S.G. 3C1.1; it applies where the defendant willfully
obstructed, or attempted to obstruct, the administration of justice
during the prosecution of the case. Examples include perjury,
attempted subornation of perjury, and providing materially false
information to a judge. Id., app. notes 3(c), 3(f). On appeal,
Aker says that the trial judge was confused in his appraisal of
false statements Aker allegedly made to Dr. Ebert and that the
record lacks the kind of particularized findings allegedly needed
to establish a willful obstruction of justice. 
 Although particularized findings are certainly helpful,
cf. United States v. Dunnigan, 507 U.S. 87, 95 (1993), the ultimate
question is whether the district judge did find a willful
obstruction or attempted obstruction and whether the evidence
supports these findings. In this case, the district court's
ultimate finding is explicit and the evidence was ample to show
Aker's knowing participation in a scheme with Jones to provide
false evidence as to ownership of the drugs in the back of the car. 
The district judge explicitly relied on this event, referring at
the sentencing to Aker's decision to "choose the course . . . of
encouraging false testimony . . . ."
 It is unclear from the transcript whether the judge was
relying at all on false statements made to Dr. Ebert; but even if
that episode is disregarded, the Jones episode was clearly in the
district court's mind and was a sufficient basis for the
enhancement. The district court also relied on "false testimony"
presented by Aker himself in court--apparently referring to Aker's 
post-plea denial that he owned the drugs in the back of the car. 
This too was a permissible basis for an obstruction enhancement
since, if the testimony was false (and it contradicted the plea),
it was certainly willful.
 The district court's refusal to accord a reduction in
offense level for acceptance of responsibility needs less
discussion. Aker went to trial, pled only when his perjury scheme
was foiled, dealt drugs while on release, and lied to the district
court on more than one issue. On this record, no judge would
likely have found acceptance of responsibility, and the denial was
certainly not clear error. Aker is fortunate not to have been
independently prosecuted for obstruction and for the second drug
offense.
 Finally, Aker says that the district court erred in
refusing to grant him a downward departure. He sought such a
departure on the grounds that, inter alia, his conduct was
"aberrant behavior," cf. United States v. Grandmaison, 77 F.3d 555,
560-61 (1st Cir. 1996), and was caused at least in part by
diminished mental capacity, see U.S.S.G. 5K2.13, and physical and
emotional condition, see U.S.S.G. 5H1.3, 5H1.4. Of course, the
refusal to grant a downward departure is not generally reviewable
on appeal, Grandmaison, 77 F.3d at 560; but an exception exists
where the district court misunderstands its own legal authority to
depart, id.
 We address only the guideline specifically permitting a
departure where "the defendant committed the offense while
suffering from a significantly reduced mental capacity." U.S.S.G.
 5K2.13. Aker contends that the district judge misunderstood the
legal standard because the judge said several times that he thought
that the departure was "discouraged" and certainly not
"encouraged." When the prosecutor supported the defendant on this
point of vocabulary, the district judge ultimately declared that
the label did not matter because the guideline still called for a
particularized finding as to basis that the district court felt it
could not make. 
 The district court was right that in the colloquial sense
of the term, nothing in the diminished capacity guideline
"encourages" a departure for significant diminished capacity: the
guideline merely says that in such a case, a departure "may be
warranted." The confusion arises simply because this and other
appellate courts have described such departures as "encouraged" in
contrast to other possible grounds of departure that are
affirmatively forbidden (e.g., race) or "discouraged" in the sense
that they "ordinarily" are not bases for departure--exemplified by
the physical and emotional condition rubrics that Aker also sought
to invoke. U.S.S.G. 5H1.3, 5H1.4. If the sentencing transcript
stood alone, we might feel confident that by the end of the
colloquy, the labels played no part in the outcome. 
 However, the judgment ultimately entered by the district
judge--admirably containing a separate memorandum on sentencing--
perpetuates the confusion. In the single paragraph directed
explicitly to Aker's request for a downward departure, the court
rejects aberrant behavior as a ground and then continues:
 I do find diminished physical capacity,
 5K2.13, and emotional condition, 5H1.3. But I
 do not consider the proposed departure an
 encouraged departure. Rather, it is a
 discouraged departure, and I am not able to
 find exceptional circumstances that would
 warrant departure. 

The statement is correct that physical and emotional condition are
discouraged grounds; but there is no mention of diminished mental
capacity (except for the citation to 5K2.13 which was probably a
typographical error) even though that was Aker's best and most
fully argued ground for a departure. One is left with the
impression--reinforced to some extent by the transcript--that the
district court was conflating two discouraged grounds of departure
(physical and emotional condition) with a final, related ground
(diminished mental capacity) which--albeit not "encouraged" in the
colloquial sense--is not in any sense a "discouraged" ground of
departure. 
 The government, to its credit--and we commend the
prosecutor for his candor--also calls our attention to another
statement by the district judge that "even pressures resulting from
diminished capacity are not the equivalent of a total excuse for
moral agency. He still had a choice and his choice was not 
totally forced upon him." If this statement were read as requiring
that diminished mental capacity be the sole cause of defendant's
crime, it would conflict (as the government recognizes) with our
decision in United States v. Lauzon, 938 F.2d 326, 331 (1st Cir.),
cert. denied, 502 U.S. 972 (1991), which requires only that
defendant's significantly reduced mental capacity have "contributed
to some extent to the commission of the offense." 
 The district judge's just quoted remark was actually made
in the course of explaining why the judge would not grant a two-
level downward adjustment for acceptance of responsibility; the
district judge probably meant (quite correctly) that Aker was still
not accepting full responsibility for his crimes. No one thought
enough of the statement to object to it at sentencing, and on
appeal Aker merely mentions the remark in passing. Still, it is
hard to be completely sure that the distinction between sole cause
and contributing cause had no connection with the diminished
capacity issue, which was specifically mentioned.
 Realistically, we think it quite unlikely that the
district court's decision was affected by the label attached
("discouraged" versus "encouraged") or by any belief that
diminished capacity had to be the sole cause of the crime. Aker's
main evidence in support of his diminished capacity claim was the
assessment that Dr. Ebert made five years later, which itself was
guarded and only favorable to the claim of diminished capacity;
and, in addition, the district court made clear that it regarded
the report as seriously undermined by lies that Aker continued to
serve up to Dr. Ebert, primarily designed to understate the length
and severity of his criminal career continuing long after his
wife's death. 
 Nevertheless, there is one fully valid objection (the use
on several occasions of the "discouraged" label for diminished
capacity departures), a slight although unpreserved concern as to
the causation test, and the conflation both in the transcript and
in the sentencing memorandum of the diminished capacity departure
with other less favored grounds of departure. Since the
consequences are important and the district court can easily clear
up any uncertainty, we think that in the interests of justice, a
remand on this single issue is warranted. If our clarifications do
not affect the outcome, the district judge is free to say so in a
single sentence. 
 Accordingly, the judgment of conviction is affirmed but
the sentence is vacated solely with respect to the request for a
possible departure on grounds of significantly diminished mental
capacity, and the case is remanded for further consideration of
that issue in light of this opinion, with or without further
proceedings as the district court may see fit and without prejudice
to reimposition of the same sentence.
 It is so ordered.